COMPAÑÍA POPULAR DE TRANSPORTE, INC., peticionaria, *v.* CORTE DE DISTRITO DE BAYAMÓN, HON. J. M. CALDERÓN, JR., JUEZ, demandada.

Núm. 13.—*Sometido:* Noviembre 13, 1944. *Resuelto:* Enero 9, 1945.

*Santos P. Amadeo* y *Artemio P. Rodríguez,* abogados de la peticionaria; *Dubón & Ochoteco,* abogados del interventor, demandante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Este caso se inició en la Corte Municipal de Bayamón mediante querella que contra la peticionaria radicó José

Cumba en reclamación de salarios. Alegó el querellante que desde el 21 de julio de 1937 hasta el 21 de julio de 1940 fué empleado de la querellada, la aquí peticionaria, en su carácter de capitán o patrón de las embarcaciones que utiliza la querellada en su negocio de porteador público de pasajeros entre San Juan y Cataño; que su contrato de servicios con la querellada fué verbal, "percibiendo el querellante . . . un salario semanal de $19.25 por siete días de trabajo a la semana y a razón de $2.75 por día de faena de nueve horas"; que durante el tiempo que el querellante fué empleado de la querellada, ésta no le concedió ni aquél disfrutó de un día de descanso por cada seis días de trabajo con salario íntegro que le concede la ley, y por el contrario trabajó los siete días de cada una de las semanas comprendidas entre el 21 de julio de 1937 y el 21 de julio de 1940, a excepción de aquellos días en que el querellante faltó a su trabajo, por los cuales la querellada le descontó de su salario una cantidad igual a la que el querellante hubiera percibido a base de lo que ganaba semanalmente si hubiese trabajado el día en que estaba ausente de su empleo; que dentro del período en que el querellante trabajó para la querellada le correspondieron 156 días de descanso con salario íntegro de $2.75 diarios, o sea la suma de cuatrocientos veintinueve dólares, que la querellada se negó a satisfacer al querellante, por lo cual éste solicitó una sentencia por dicha cantidad.

La querellada impugnó la jurisdicción de la corte municipal, alegando que el caso expuesto por el querellante no estaba comprendido dentro de las disposiciones de la Ley núm. 10 de 1917 (vol. II, pág. 217) por no tratarse en realidad de una reclamación de salarios sino de una reclamación de indemnización por haber trabajado sin compensación supuestos días de descanso. Al mismo tiempo radicó excepciones previas de falta de jurisdicción, de insuficiencia de hechos constitutivos de causa de acción y de que la querella era ambigua, ininteligible y dudosa, y la contestación.

La corte municipal, a base de las excepciones previas, desestimó la querella. Apeló el querellante para ante la corte de distrito. Insistió la querellada en sus excepciones previas y la corte las desestimó. Contra esa resolución la querellada interpuso recurso de *certiorari,* y esta corte, interpretando liberalmente las alegaciones de la querella, sostuvo que aducía hechos constitutivos de causa de acción. *Compañía Popular* v. *Corte,* 63 D.P.R. 121. Devuelto el caso a la corte de distrito, la querellada enmendó su contestación, reprodujo las excepciones previas, atacó la constitucionalidad de la ley al amparo de la cual el querellante reclama compensación por el día de descanso por cada seis de trabajo (Ley núm. 110 de 1937, Sesión Ordinaria, pág. 268), y alegó finalmente que el jornal por hora que devengaba el querellante de conformidad con el contrato fué de 26½ centavos desde el 21 de julio de 1937 hasta el 11 de enero de 1940 y de 27½ centavos desde esta última fecha hasta el 21 de julio de 1940, pagándosele doble compensación por las novenas horas.

Celebrado el juicio en su fondo, la corte de distrito llegó a la conclusión de que el querellante era un empleado de la querellada a base de un salario semanal y condenó a ésta a pagarle la cantidad de $115.12.

Atacando la sentencia dentro de este recurso de *certiorari* bajo la Ley núm. 32 de 1943 (pág. 85), la peticionaria señala como errores: (1) el haberse resuelto que el querellante era un empleado de la querellada a base de un salario semanal; (2) la negativa a admitir en evidencia cierta prueba documental ofrecida por el querellado, marcada Identificación *A* e Identificación *B,* y (3) haberse sostenido la constitucionalidad de la Ley.

La Ley núm. 110 de 1937 (Leyes de 1936-37, pág. 268), que empezó a regir inmediatamente después de su aprobación el 13 de mayo de 1937, en lo pertinente dispone:

."Que la Ley No. 54, aprobada el 28 de abril de 1930, 'Para enmendar el artículo 553 del Código Penal y para otros fines' queda enmendada y reenactada en su parte dispositiva del modo siguiente:

" 'Sección 1.—Que el artículo 553 del Código Penal tal como ha sido enmendado en agosto 9, 1931 (sic), marzo 28, 1914, noviembre 23, 1917 y mayo 20, 1925, quede enmendado de la manera siguiente:

" 'Artículo 553.—Los domingos, durante todo el día excepto cuando fueren domingos los días 24 de diciembre, y primero y 5 de enero; el primer lunes de septiembre (*Labor Day*), y el día 4 de julio, los días de fiesta legal desde las 12 a. m.; todos los sábados desde las 9 p. m.; todos los días laborables desde las 6 p. m. y los días 24 y 31 de diciembre y 5 de enero de cada año, desde las 10 p. m., permanecerán cerrados al público; y una hora después de cerrados, no se permitirá ninguna clase de trabajo para los empleados en los establecimientos comerciales e industriales, con excepción de los designados a continuación:

" "  *   *   *   *   *   *   *   *

" '6. Las empresas de utilidad pública y cuasi públicas, y los trabajos urgentes y necesarios para evitar peligro y considerables pérdidas de dinero.

" '  *   *   *   *   *   *   *

" 'Sección 2.—Los empleados y dependientes de las empresas y establecimientos exceptuados por la ley, que presten sus servicios *a base de un salario anual, mensual, semanal o en cualquier forma, que no sea por jornal o ajuste a un tanto alzado*, tendrán derecho a un día de descanso por cada seis de trabajo, con salario íntegro.' " (Bastardillas nuestras.)

De acuerdo con la sección 2 transcrita, los empleados y dependientes de las empresas y establecimientos exceptuados por la Ley que tienen derecho al día de descanso con salario íntegro son aquellos que prestan servicios a base de un salario anual, mensual, semanal o en cualquier forma que no sea por jornal o ajuste a un tanto alzado. Es, pues, la unidad de tiempo—año, mes, semana—que de acuerdo con el contrato sirve de base para computar el salario, la única norma que establece la ley para determinar cuáles son los empleados o dependientes de las empresas exceptuadas por la Ley que tienen derecho al día de descanso. Sentada esta premisa, la cuestión a determinar es cuál es la unidad de

tiempo que de acuerdo con el contrato de servicios se fijó para computar el salario del querellante. Resolviendo esta cuestión, la corte de distrito sostuvo que el contrato de servicios celebrado entre el querellante y la querellada fué a base de un salario semanal y por consiguiente estaba comprendido dentro de la Ley que concede a los empleados y dependientes el día de descanso con salario íntegro.[1]

---

[1] Los razonamientos de la corte de distrito en apoyo de su tesis son los siguientes:

"Mientras la querellada alega que dicho salario era a base de 26½ centavos la hora regular y de 53 centavos la hora extra, desde el 21 de julio de 1937 al 11 de enero de 1940; y de 27½ centavos la hora regular y de 55 centavos la hora extra, desde el 12 de enero al 21 de julio de 1940, y por tanto el querellante no percibía un salario por semana, mensual o por año y sí por hora, éste por el contrario, consigna que su salario era uno por semana, sirviendo el tipo fijado por hora, a los únicos efectos de calcular la querellada lo que le correspondía al reclamante por razón de doble compensación por la hora extra diaria, comprendida en una faena cotidiana, según lo anteriormente expresado.

"En cuanto a este extremo concierne, la corte procede ahora a dirimir el conflicto de evidencia surgido y a base de la apreciación de la prueba, resuelve que el querellante era un empleado de la querellada a base de un salario semanal, llegando a tal conclusión por todas las circunstancias imperantes en relación con la contratación de sus servicios y prestación de los mismos a la querellada.

"Pero aún más, aún en el supuesto que el querellante no hubiera sido un empleado de la querellada a razón de un salario semanal, y sí uno calculado a base de compensación por hora de trabajo, y que por tanto, la conclusión a que ha llegado este tribunal sobre la naturaleza semanal del salario del reclamante fuera errónea, siempre el querellante tiene derecho a reclamarle a su principal paga por el séptimo día de descanso, por cada seis de trabajo, según demostraremos.

"La reclamación de salarios en el caso de epígrafe la funda el querellante en la sección 2 de la Ley núm. 10 del 13 de mayo de 1937 (sic), enmendando el artículo 553 del vigente Código Penal . . .

" .          .          .          .          .          .          .          .

"Para la aplicabilidad del precepto legal antes referido, se hace imperativamente necesario que concurran todas y cada una de las siguientes circunstancias, que son las únicas que dan derecho a percibir 'un día de descanso por cada seis de trabajo, con salario íntegro':

"1. Que el reclamante sea un empleado o dependiente,

"2. De establecimientos exceptuados por la ley (que puedan permanecer funcionando los domingos y días feriados, sin sujetarse a un horario en cuanto a su cierre o cese de operaciones),

"3. Que tales empleados 'presten sus servicios a base de un salario anual, mensual, semanal o en cualquier forma, que no sea por jornal o ajuste a un tanto alzado.'

■ Veamos ahora si esa conclusión está sostenida por las alegaciones o por la prueba. No lo está por las alega-

"Que el querellante es un empleado de la querellada y que ésta, por razón de ser una empresa de servicio público está exceptuada del cumplimiento de las disposiciones del artículo 553 del Código Penal, son extremos sobre los cuales no hay contención, por la propia admisibilidad de la querellada, quedando sólo por determinar, si el querellante está o no comprendido dentro del tercer requisito enumerado anteriormente por nosotros en relación con la naturaleza del salario.

"La querellada basa exclusivamente su defensa, no en que la compensación del querellante era a base de ajuste a un tanto alzado, y sí y únicamente, en que lo que percibía el reclamante de ella por razón de su trabajo como empleado de la misma, era un jornal, y no un salario por año, mes o semana. Consideramos que la reclamante no le está dando aplicación a todos y cada uno de los preceptos del estatuto, incurriendo en el error de considerar que sólo el salario que sea anual, mensual o semanal es el que da derecho a percibir un día de descanso con salario íntegro por cada seis de trabajo. No, tal interpretación es una parcial, por no entrañar la aplicación total de lo preceptuado por el legislador, según comprobaremos.

"Sólo están fuera del alcance del beneficio de dicho estatuto, aquellos empleados o dependientes a jornal o ajuste a un tanto alzado, y comprendidos dentro de sus preceptos, aquellos otros empleados o dependientes que presten sus servicios a un salario (1) anual, (2) mensual, (3) semanal, (4) 'o en cualquier otra forma' que no sea por jornal o ajuste a un tanto alzado.

"¿Qué quiso decir el legislador con la frase 'o en cualquier otra forma'? El propio estatuto establece la única interpretación lógica a dicha frase. 'En cualquier otra forma' entraña la creación de un derecho al amparo de dicha ley, a favor de aquellos empleados o dependientes, que no percibiendo un salario anual, mensual o semanal, tampoco lo reciben por jornal o ajuste a un tanto alzado.

"La contienda pues, queda ahora reducida, y en atención a todo lo anteriormente expuesto, a los siguientes límites: ¿era un salario o un jornal lo que percibía el querellante de la querellada en pago de sus servicios como capitán de sus embarcaciones?

" .     .     .     .     .     .     .     .     .

"El concepto de 'ajuste a un precio alzado,' se encuentra establecido en el artículo 1840 del Código Civil (ed. 1930), mas no así el de 'jornal.'

"Se ha sostenido a veces, que salario y jornal son vocablos sinónimos, Alcubilla, tomo VIII, pág. 534, (ed. 1894); Enciclopedia Jurídica Española, tomo XIX, pág. 941; Bouvier's Law Dictionary, vol. 3, pág. 2983; 3 L.R.A. 644.

"Nuestra legislación social, y hasta donde ha podido alcanzar nuestra búsqueda, no establece una definición específica para salario y jornal, pero sí establece como conceptos distintos el de 'empleado' y 'obrero.' (Véanse Ley Núm. 73, del 4 de mayo de 1931; Ley Núm. 17 del 5 de abril de 1937; y la Ley Núm. 10 del 14 de noviembre de 1917, estableciendo el procedimiento en caso de reclamaciones de obreros y empleados, donde se define qué es un 'obrero' y qué es un 'empleado'.)

ciones porque.como hemos visto mientras en la querella se alega que el contrato era a base de su salario semanal, en la contestación alega la querellada que el querellante estuvo empleado a jornal devengando 26½ centavos por hora desde que empezó el contrato el 21 de julio de 1937 hasta el 11 de enero de 1940, y 27½ centavos por hora desde esta última fecha hasta el 21 de julio de 1940, pagándosele doble compensación por las novenas horas.

La conclusión de la corte de distrito tampoco está sostenida por la prueba porque de la declaración del propio querellante resulta que la unidad de tiempo que servía de base para computar su salario era el día, mientras que de la declaración de su testigo Ramón Ríos y de la del testigo de la querellada Ladislao Córdoba aparece que dicha unidad de tiempo era la hora, es decir, a 26½ centavos la hora desde el 21 de julio de 1937 hasta el 11 de enero de 1940, y a 27½ centavos por hora desde esta última fecha hasta el 21 de julio de 1940.

Tomamos de la declaración del propio querellante:

''P. Pero la compensación del trabajo suyo, ¿cuál era el tipo? R. Ultimamente dos dólares setenta y cinco centavos por nueve horas.

''P. ¿No era por día, o era por semana? R. Por semana. ·

''P. ¿Entonces era por día, o era por semana su trabajo?

---

''No hay duda alguna, que el empleado ocupa una jerarquía o posición superior a la del obrero; continuidad en la prestación de sus servicios; conocimientos especiales y responsabilidad en mayor grado que el obrero, de donde deriva mando o dirección.

'' .  .  .  .  .  .  .  ..

''De aceptar este tribunal la teoría de la querellada en el sentido de que el querellante, por razón a que percibía su salario a base de su computación de una cantidad determinada por hora, sería sancionar esta corte un medio hábil para burlar la ley, convirtiendo en 'jornalero' a un 'empleado' según el sentido gramatical y corriente de estos vocablos. Toda interpretación al estatuto que venimos comentando, que destruya su propósito social de reservas de energías humanas para beneficio del Estado, concediéndoles derechos a empleados y dependientes dedicados a faenas continuas en las empresas y establecimientos exceptuados por la ley, debe ser rechazada, no permitiéndose que sean privados de su reparador descanso con pago de salario, aquéllos que el propio legislador quiso proteger; . . ..''

R. Tiene usted que comprender que yo trabajaba nueve horas al día y se hace el cómputo de días a la semana.

"P. Eso no contesta mi pregunta. ¿Si el tipo básico era por día, por hora, o por semana? R. *Por día.*

"P. ¿Por día de cuántas horas? R. *De nueve horas.*

"P. Entonces si el tipo básico era por días de nueve horas, ¿por qué tenían que cobrar la hora novena doble? R. Porque hay una ley que prohibe trabajar más de ocho horas.

"P. Perfectamente bien. ¿Entonces la novena hora se la pagaban cómo? R. Al tipo doble.

"P. ¿Cómo se determinaba ese tipo? R. A razón de veintiséis centavos y medio, eran cincuenta y tres centavos." (Bastardillas nuestras.)

De la declaración de Ramón Ríos, quien era también capitán de las embarcaciones de la querellada, aparece:

"P. ¿Y a razón de cuánto le descontaban a usted por esas horas que dejara de trabajar? R. De acuerdo: si me las pagan a peseta, me descuentan una peseta.

"P. Entonces la Compañía fijó a un tanto por esa hora, ¿no es esa la verdad en este caso? R. No es cierto.

"P. ¿No es la verdad que la Compañía fijó a una cantidad por hora, y que entonces al final de cada semana le pagaban a usted y a los demás empleados que hubieran trabajado en esa semana? R. De cuerdo a los días que hubiéramos trabajado.

"P. ¿Y de acuerdo con las horas? R. Sí, señor.

"P. *Y era una cantidad que se fijó por horas,* ¿no es eso? R. *Sí."* (Bastardillas nuestras.)

Y Ladislao Córdoba, administrador de la compañía, declaró:

"P. ¿Cuál era el convenio con los empleados en relación con la compensación a pagar entre el veinte de julio de mil novecientos treinta y siete y el veintiuno de julio de mil novecientos cuarenta? R. *Por horas trabajadas.*

"         *         *         *         *         *         *         *

"P. . . . ¿Cuándo fué que se hizo ese convenio sobre los salarios o la compensación de los empleados?

R. El convenio ese se hizo en la última vez que tuvieron la discusión los empleados: en el mil novecientos treinta y tres, cuando yo entré de administrador a la Compañía.

"P. Y entonces, ¿qué se convino? R. *Se estipularon los salarios por hora.*

"    *    *    *    *    *    *    *    *

"P. ¿Y qué salarios se fijaron en ese convenio? R. Veintiséis centavos y medio a los patrones y maquinistas de las lanchas." (Bastardillas nuestras.)

Y examinando el *exhibit* número 1 del querellante, que es a la vez el número 1 de la querellada,(²) nos fortificamos en nuestra conclusión al efecto de que el querellante no trabajó a base de un salario semanal. El exihibit revela que el contrato era a base de un salario por hora, y que cuando en un día el querellante trabajaba nueve horas, recibía doble compensación por la novena hora. También revela que para computar el pago que recibía el obrero el sábado de cada semana, se sumaban las horas trabajadas cada día, considerando como dobles las novenas horas que hubiere trabajado en algún día, y se multiplicaba la suma por el tipo convenido a que ya nos hemos referido. Aparece también del exhibit que en muy raras ocasiones el querellante recibió la misma cantidad semanal como importe de su trabajo, lo que demuestra que el salario no era a base de semanas.

Tanto de la evidencia del querellante como de la de la querellada racionalmente se infiere que la unidad de tiempo establecida por los contratantes para fijar el salario del querellante fué la hora, es decir, a razón de 26½ centavos la hora desde el 21 de julio de 1937 hasta el 11 de enero de 1940, y de ahí en adelante a razón de 27½ centavos la hora. El hecho de que el pago se verificase el sábado de cada semana no significa que el salario se hubiere convenido a base de un tanto por semana. Tampoco varía el tipo básico el hecho de que el empleo sea continuo y permanente, o el de que la naturaleza del trabajo requiera cierta idoneidad o

_____

(²) Consiste en un cuadro sinóptico extraído de los libros de la querellada, donde aparece una relación del número de horas de cada día trabajado por el querellante en cada semana y la compensación cobrada semanalmente desde que empezó a trabajar como capitán el 21 de julio de 1937 hasta el 18 de julio de 1940.

competencia por parte del obrero o empleado. A este efecto conviene notar que los decretos de la Junta de Salario Mínimo fijando los salarios mínimos de los obreros o empleados de la industria del azúcar, fijaron para los de la fase agrícola — que generalmente no son trabajadores idóneos (*skilled laborers*)—un tanto por día de ocho horas de trabajo para ciertos trabajadores y otro tipo para días de siete horas de trabajo para otra clase de trabajadores, mientras que al fijar los salarios de los obreros o empleados de la fase industrial—en su mayoría trabajadores idóneos—fijaron un tanto por hora para cada clase de trabajo. Es decir, para los obreros de la fase agrícola la unidad de tiempo es el día de ocho o siete horas, según los casos, mientras que para los obreros de la fase industrial la unidad de tiempo es la hora. Los empleados de una y otra fase cobran al fin de la semana, y a nadie se le ocurriría sostener que por el hecho de que el montante de sus jornales se pague al fin de cada semana tales obreros prestan servicios a base de un salario semanal.

▆▆▆▆ Establecido que el salario del querellante está fijado a base de un tanto por hora de trabajo, y aun concediendo, a los efectos del argumento, que se hubiese fijado a base de un tanto por día, debemos determinar ahora si el querellante es uno de los obreros con derecho a un día de descanso con salario íntegro por cada seis de trabajo.

Como ya hemos visto, la Ley concede el día de descanso a los empleados y dependientes que prestan servicio a base de un salario anual, mensual, semanal o en cualquier forma que no sea por jornal o ajuste a un tanto alzado. Expresamente niega la ley el derecho al día de descanso a los que trabajan por jornal. La palabra ''jornal,'' si bien no está definida en la Ley núm. 110, tiene su significado perfectamente definido en el lenguaje legal y en el corriente. Escriche, en su Diccionario de Legislación y Jurisprudencia, la define como ''El extipendio que gana el trabajador en un día

entero por su trabajo." En igual forma la define el Diccionario de la Academia Española y el Diccionario Enciclopédico Hispanoamericano. Por consiguiente, los empleados y dependientes que prestan sus servicios a base de un salario por día de trabajo no están incluídos entre los que tienen derecho a recibir el día de descanso. Sostiene la corte inferior que en el supuesto de que el contrato del querellante sea a base de un salario por hora, su caso cae dentro de la frase "o en cualquier forma," que aparece en la sección 2 de la ley, y por consiguiente le concede el derecho al día de descanso. No compartimos la opinión de la corte inferior en cuanto a este punto. Parece claro que si los que prestan servicios a base de día de trabajo no tienen ese derecho, tampoco lo tienen aquellos que trabajan por hora, que no es sino una fracción de un día de trabajo. Se desprende fácilmente que la frase "o en cualquier forma, que no sea por jornal o ajuste a un tanto alzado" se refiere, como sostienen los abogados de la querellada, a períodos mayores de siete días—quincenas, trimestres, etc.—dentro de los cuales naturalmente puedan trabajarse seis días consecutivos. Que ello es así lo demuestra el hecho de que al expresarse los períodos a base de los cuales se concede el día de descanso, se pone en último lugar la semana, y expresamente se excluye el día.

La conclusión a que acabamos de llegar hace innecesario discutir los otros dos errores señalados por la querellada apelante.

*Procede por lo expuesto dejar sin efecto la sentencia apelada y devolver el caso a la corte inferior para que dicte una sentencia declarando sin lugar la querella.*