Manuel Parrondo Diez, querellante y apelado, *v.* L. Rodríguez & Co., querellada y apelante.

Núm. 8969.—*Sometido:* Noviembre 9, 1944. *Resuelto:* Enero 17, 1945.

*R. Cuevas Zequeira,* abogado de la apelante; *H. Ramos Mimoso,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelado presentó una querella en la Corte Municipal de San Juan el 14 de agosto de 1942 por el procedimiento establecido en la Ley núm. 10 de 1917 (vol. II, pág. 217), según ha sido enmendada. Alegó que la querellada es sucesora y continuadora de las actividades de las firmas L. Rodríguez y Compañía, S. en C., y L. Rodríguez y Compañía, y que lo mismo que sus antecesoras, se ha dedicado en esta ciudad a un negocio de industria y comercio, consistente principalmente en la confección y venta de trajes; que desde el año 1927 hasta el 15 de marzo de 1941 el querellante trabajó para dichas firmas en calidad de obrero o empleado a cargo de diversos trabajos dentro y fuera del establecimiento, a base de un salario semanal de doce dólares; que de acuerdo con el contrato verbal de trabajo, el querellante venía obligado a trabajar ocho horas diarias, pero que ello no obstante, mientras estuvo empleado con la querellada y sus antecesoras, los días laborables trabajó de 7:30 a. m. a 12 m. y de 1 p. m. a 8 p. m.; los domingos de 8 a. m. a 12 m., y en las épocas de balance, o sea durante quince días cada año, tres horas adicionales, de 8:30 p. m. a 11:30 p. m.; que

desde el 5 de noviembre de 1935, fecha en que empezó a regir la Ley núm. 49 de 1935, hasta el 14 de marzo de 1941, en que el querellante cesó en su empleo, había trabajado en días regulares, en adición a las ocho horas diarias convenidas, un total de 5,853 horas extras, y un total de 1,112 horas extras durante los domingos.

En la segunda y tercera causas de acción el querellante reclamó compensación por horas extras trabajadas entre el 3 de agosto de 1931 y el 4 de noviembre de 1935, y entre el 27 de julio de 1930 y el 2 de agosto de 1931, respectivamente. El querellante solicitó sentencia por la cantidad de $2,442.48 más una suma no mayor de $50 a ser fijada por la corte por vía de indemnización, más las costas, gastos y honorarios de abogado.

· La querellada admitió que el querellante había trabajado en concepto de empleado para ella y sus antecesoras desde el año 1927 hasta el 14 de marzo de 1941 a base de un salario de doce dólares semanales, y alegó que el horario de trabajo del querellante en todo tiempo fué de 8 a. m. a 12 m. y de 1: 30 p. m. a 5: 30 p. m. Negó la querellada que el querellante hiciera labor extraordinaria por un término de quince días cada año, alegando en contrario que si bien en dos o tres temporadas el querellante trabajó un par de horas extras por la noche, en ningún momento el trabajo en cuestión se extendió a más de tres días de labor extraordinaria, por lo cual el querellante recibió la compensación por él requerida. Negó además que el querellante tuviese horas extras acumuladas, y como materia nueva constitutiva de defensa alegó:

(*a*) que la corte municipal no tenía jurisdicción para conocer del caso;

(*b*) que la querella no aducía hechos determinantes de causa de acción;

(*c*) que la reclamación del querellante correspondiente al período anterior al 15 de agosto de 1939 estaba prescrita, Código Civil, artículo 1867, inciso 3, y

(*d*) que el querellante estaba impedido de establecer reclamación alguna por los hechos a que se refería la querella por habérsele satisfecho, por mediación del Departamento del Trabajo, la cantidad que según ese Departamento debía satisfacerle la querellada.

La corte de distrito, en la apelación que contra la sentencia de la corte municipal interpuso la querellada, declaró sin lugar las defensas "A", "B," y "C," fundando su resolución en los casos de *J. L. Wiewall & Co.* v. *Quiñones, Juez,* 61 D.P.R. 456, *Cardona* v. *Corte,* 62 D.P.R. 61, y *Muñoz* v. *Corte,* 63 D.P.R. 236, respectivamente. Penetrando en los méritos del caso, declaró probado que desde el 5 de noviembre de 1935 [1] hasta el 15 de marzo de 1941 el querellante trabajó durante los días laborables once y media horas y que durante ese mismo tiempo trabajó 1580 novenas. Hizo constar la corte que como el querellante no había probado su alegación al efecto de que su contrato era para trabajar ocho horas diarias [2] debía entenderse que su contrato de trabajo incluía once y media horas diarias; que dividiendo el salario de doce dólares entre los siete días de la semana,[3] resultaba que. el querellante ganaba $1.71 diarios, y dividiendo esta última cantidad por 11½, que era el número de horas que según la corte se obligó a trabajar diariamente, habría de concluirse que ganaba quince centavos por hora; y que como el querellante había recibido compensación sencilla por la novena hora al recibir los doce dólares semanales, sólo le

---

[1] La Ley núm. 49 de 1935 que fijó la jornada de trabajo en ocho horas diarias y concedió al obrero doble compensación por la novena hora trabajada empezó a regir el 5 de noviembre de 1935.

[2] Esta conclusión de la corte es errónea, pues en la querella se alegó que el contrato era por ocho horas, y esa alegación fué expresamente admitida en la contestación. Pero como el querellante no apeló de la sentencia, no podemos alterar esa conclusión por él consentida.

[3] La corte en su opinión dijo que por la prueba practicada por las partes y creída por ella llegó a la conclusión de que la remuneración que de acuerdo con el contrato recibía el querellante era a razón de doce dólares semanales por siete días de trabajo.

restaba la compensación adicional por 1580 novenas horas, o sea $237.

La corte también estimó probado que desde principios del año 1927 hasta el 13 de mayo de 1937, durante 537 domingos, el querellante trabajó cuatro horas cada domingo, o sea un total de 2,148 horas, y valorándolas a razón de quince centavos, le concedió la cantidad de $322.20.

Resolviendo la cuarta defensa alegada por la querellada, la corte la declaró sin lugar porque la cantidad que al cesar en su empleo recibió el querellante de la querellada por mediación del Departamento del Trabajo lo fué por concepto de bonificación por los catorce años consecutivos trabajados para ella y sus antecesoras.

Finalmente la corte no concedió compensación al querellante por las horas extras trabajadas durante quince días cada año desde el 5 de noviembre de 1935 hasta que cesó en su empleo; desestimó la segunda y tercera causas de acción, y dictó sentencia condenando a la querellada a pagarle la cantidad de $559.20, intereses legales sobre dicha suma desde la fecha de radicación de la querella, y las costas de esta acción.

En la apelación que para ante este tribunal interpuso la querellada alega que la corte inferior erró:

1. Al declarar sin lugar la defensa de prescripción;

2. Al desestimar la defensa de que el querellante estaba impedido de reclamar salario por horas extraordinarias después de haber transigido sus reclamaciones ante el Departamento del Trabajo;

3. Al dar crédito a la declaración del querellante, y

4. Al condenar a la querellada a pagar al querellante la suma de $559.20.

 Actuó correctamente la corte sentenciadora al declarar sin lugar la defensa de prescripción por la autoridad del caso de *Muñoz* v. *Corte,* supra. Tampoco erró al deses-

timar la defensa a que se refiere el segundo señalamiento de error porque de la prueba presentada resulta evidente que la cantidad que pagó la querellada por mediación del Departamento del Trabajo lo fué por concepto de una bonificación considerando que el querellante había trabajado para ella y sus antecesoras por espacio de catorce años consecutivos. Siendo ello así, no está el querellante impedido de reclamar el pago de aquellas horas extras que alega haber trabajado, y que de acuerdo con la ley y los casos antes citados tenía derecho a que le fueran compensadas. Y tampoco erró la corte al dar crédito a la declaración del querellante. Su testimonio no fué contradicho, y además está sostenido por los de otros testigos, inclusive algunos de la parte querellada.

■■ Pasemos a discutir ahora si erró la corte al condenar a la querellada a pagar al querellante la cantidad de $559.20. Esta suma, como hemos visto, se compone de dos partidas: una de $237 por concepto de novenas horas, y otra de $322.20, importe de las cuatro horas trabajadas durante los domingos.

En cuanto a la primera partida, la decisión de la corte está sostenida por la Ley núm. 49 de 1935, según ha sido repetidamente interpretada por este Tribunal.

En cuanto a la segunda, la corte inferior basó su decisión en el artículo 553 del Código Penal, según quedó enmendado por la Ley núm. 18 de 20 de mayo de 1925, pág. 137, y en la sección 2 de la citada Ley, a saber:

"Artículo 553.—Los domingos, durante todo el día; excepto cuando fueren domingos los días 24 de diciembre, y primero y 5 de enero; el primer lunes de septiembre (*Labor Day*), y el día 4 de julio; los días de fiesta legal desde las 12 m.; todos los sábados desde las 9 p. m.; todos los días laborables desde las 6 p. m., y los días 24 y 31 de diciembre y 5 de enero de cada año, desde las 10 p. m., permanecerán cerrados al público; y una hora después de cerrados, no se permitirá ninguna clase de trabajo para los empleados en los

establecimientos comerciales e industriales, con excepción de los designados a continuación:

" ❋ ❋ ❋ ❋ ❋ ❋ ❋

"Sección 2.—Los empleados y dependientes de las empresas y establecimientos *no exceptuados por la ley,* que presten sus servicios a base de un salario anual, mensual, semanal o en cualquier forma, que no sea por jornal o ajuste a un tanto alzado, tendrán derecho a un día de descanso por cada seis de trabajo, con salario íntegro." (Bastardillas nuestras.)

El establecimiento de la querellada no es de los exceptuados por el artículo 553 del Código Penal, y como la sección 2 de la Ley núm. 18 de 1925 dice que los empleados y dependientes de las empresas y establecimientos *no exceptuados* por el artículo 553 que prestan sus servicios a base de un salario anual, mensual o semanal, tendrán derecho a un día de descanso con salario íntegro por cada seis de trabajo, aplicando por analogía la doctrina del caso de *Compañía Popular* v. *Corte,* 63 D.P.R. 121, la corte inferior concedió al querellante compensación por las 2,148 horas trabajadas durante los domingos.

Del contexto de toda la Ley de 1925 y de las vicisitudes de la sección de la Ley núm. 26 de 23 de noviembre de 1917, pág. 273, por la cual se concedió por primera vez el día de descanso con salario íntegro por cada seis de trabajo, no cabe duda de que la palabra "no" en la sección 2 de la ley de 1925 fué puesta por error y que si le diéramos efecto frustraríamos la intención del legislador.

Un análisis del artículo 553 del Código Penal, según quedó enmendado. por la ley de 1925, demuestra que la intención legislativa fué impedir que los empleados y dependientes de los establecimientos comerciales trabajasen más horas de las especificadas en el mismo artículo; que no trabajasen durante los domingos, el primer lunes de septiembre (*Labor Day*) y el día 4 de julio; y que los demás días de fiesta legal

no trabajasen desde las doce del día, y los sábados desde la hora que el citado artículo especifica. Pero comprendiendo que hay ciertos establecimientos a los cuales no convenía aplicarles las disposiciones de ese artículo, los exceptuó, y consecuentemente los empleados de esos establecimientos exceptuados podían ser obligados a trabajar los domingos y días festivos. Así, pues, los empleados de los establecimientos no exceptuados por el artículo gozan del descanso que éste les ofrece durante los días en él especificados, mientras que los empleados y dependientes de los establecimientos exceptuados no gozan de esos días de descanso. Eran estos últimos los que necesitaban del descanso. No pudo ser la intención del legislador conceder un día de descanso al empleado, que por ministerio de la ley ya lo tenía y dejar sin protección al dependiente o empleado de aquellos establecimientos o empresas que no tenían ningún día de descanso en la semana.

Pasemos a la historia de la ley.

Desde el 1902 el legislador empezó a preocuparse por el derecho que tienen al descanso los empleados y dependientes de las empresas o establecimientos comerciales. Así, al aprobar el Código Penal, en su artículo 553 [4] ordena el cierre de dichos establecimientos todos los domingos desde la doce del día. Exceptúa del cierre ciertos establecimientos, como mercados públicos, farmacias, panaderías, y a teatros y otros lugares dedicados exclusivamente a recreo o a fines carita-

---

(¹)El artículo 553 del Código Penal originalmente decía así:

''Que todos los domingos, después de las doce del día, permanecerán cerrados y sin efectuar transacciones de ninguna especie, los establecimientos comerciales e industriales, con excepción de los mercados públicos, farmacias, panaderías, hoteles, restaurants, cafés, y lugares donde sólo se venden refrescos, exceptuándose también las empresas de utilidad pública y cuasi pública y trabajos urgentes y necesarios para evitar inusitadas y considerables pérdidas de dinero. Pero esta prohibición no se hará extensiva a los teatros, ni a otros lugares dedicados exclusivamente a recreo o a fines de caridad, en los cuales sitios será legal trabajar a toda hora durante los domingos, pero solamente en pro de dichos fines de caridad o para ayudar a proporcionar recreos.''

tivos. Nada. proveyó, sin embargo, con respecto al descanso de los empleados de los establecimientos exceptuados.

El año 1913 marca un nuevo avance en el derecho del empleado al descanso, prescribiéndose en la Ley núm. 57 de 13 de marzo de 1913, pág. 96, que en adición al cierre durante el medio día del domingo, los días de fiesta legal se cerrasen los establecimientos desde las doce del día, los sábados a las diez de la noche y los demás días laborables desde las siete de la noche; y en la núm. 131 de 9 de agosto del mismo año (Sesión Extraòrdinaria, pág. 88), que los domingos durante todo el día, los· días de fiesta legal desde las doce del día, los sábados desde las diez de la noche y los demás días de trabajo desde las seis de la tarde, los establecimientos comerciales e industriales no exceptuados permaneciesen cerrados. Sigue olvidado el derecho de los dependientes y empleados de los establecimientos y empresas exceptuados.

En el 1914 experimentaron un revés los derechos de los empleados al ordenarse por la Ley núm. 24 de 28 de marzo de 1914, pág. 177, que los días de trabajo (excepto los sábados que continuaban cerrándose a las diez p. m.) se cerrasen los establecimientos a las siete de la noche en vez de a las seis de la tarde como se dispuso en la del 1913, y que los días 24 de diciembre y 5 de enero de cada año se cerrasen a las diez de la noche. La suerte de los empleados de los establecimientos o·empresas exceptuados continuó inalterada.

En el año 1917 vuelve el legislador a ocuparse de los derechos del empleado, y por la Ley núm. 26 de 23 de noviembre de 1917 (Sesión Extraordinaria, pág. 273), concede como día de descanso la totalidad del Día del Trabajo (*Labor Day*) y del 4 de julio, ordena el cierre los sábados desde las nueve de la noche en vez de desde las diez, y en los demás días .de trabajo vuelven los establecimientos no exceptuados a cerrarse desde las seis de la tarde.. Por primera vez en la

historia de esta legislación el legislador demuestra su intención de hacer justicia al olvidado empleado de las empresas exceptuadas, pero desgraciadamente esa intención quedó frustrada porque al conceder en la sección 3 de la citada Ley núm. 26 de 1917 un día de descanso con salario íntegro por cada seis de trabajo a los empleados que prestaren servicios sobre la base de un salario anual, mensual, semanal o en cualquiera otra forma que no sea por jornal o ajuste a un tanto alzado, se expresó por error, como veremos a continuación, que ese beneficio se concedía a los empleados y dependientes de los establecimientos *"no exceptuados* por esta Ley." (Bastardillas nuestras.) Que el vocablo "no" antes de las palabras "exceptuados por esta Ley" fué un lapsus del legislador lo demuestra el hecho de que al advertir éste el error incurrido, en la primera oportunidad que tuvo, menos de tres meses después de aprobada la Ley de 1917, se apresuró a enmendarla por la Ley núm. 3 de 18 de febrero de 1918, pág. 17, con el único y exclusivo fin de subsanar el error, eliminando de la sección 3 anteriormente transcrita el vocablo "no" antepuesto a las palabras "exceptuados por esta Ley," de suerte que dicha sección quedase redactada así:

"Los empleados y dependientes de las empresas y establecimientos exceptuados por esta Ley, que presten sus servicios sobre la base de un salario anual, mensual, semanal o en cualquier otra forma que no sea por jornal o ajuste a un tanto alzado, tendrán derecho a un día de descanso por cada seis de trabajo, con salario íntegro."

Pero la justicia que aunque tarde, llegó al empleado de las empresas exceptuadas por la ley, no subsistió por muchos años. La Ley núm. 18 de 20 de mayo de 1925 (pág. 137) enmendó la Ley núm. núm. 26 de 1917 en cuanto a otros particulares, pero como en el título de la ley enmendatoria no se mencionó la Ley núm. 3 de 1918, al redactarse la ley tal como había quedado enmendada por la Ley de 1925 no se tuvo a la vista la de 1918, y se copió la sección 3 de la ley de 1917, que equivale a la sección 2 de la ley de 1925, tal y

como existía antes de la enmienda de 1918, frustrándose una vez más por este accidente la intención del legislador.[5]

La Ley núm. 54 de 28 de abril de 1930 (pág. 409) enmendó nuevamente el artículo 553 exclusivamente para incluir en el primer grupo de las empresas exceptuadas, las fábricas de empacar, enlatar y refrigerar frutas y vegetales. Volvió el legislador a olvidar la enmienda de 1918, y en la redacción de la sección 2 subsistió la palabra "no".

Por último, la Ley núm. 110 de 13 de mayo de 1937 (pág. 268) subsanó el error, eliminando por segunda vez la palabra "no", de suerte que son los empleados y dependientes de los establecimientos *exceptuados* por la ley los que tienen derecho al día de descanso con salario íntegro por cada seis de trabajo.

Como indicáramos al principio, el contexto de la ley, su espíritu y su historia legislativa no dejan lugar a dudas de que al aparecer en la ley de 1925 la palabra "no" en su sección 2 fué un error, y que la intención del legislador siempre ha sido conceder el día de descanso con salario íntegro a aquellos empleados y dependientes de las empresas y esta-

(5) Errores de esta naturaleza ocurren con alguna frecuencia en la redacción de nuestras leyes, como podrá notarse en el primer párrafo del artículo 553 del Código Penal, según fué enmendado por la Ley núm. 18 de 1925. Dicho párrafo, en lo pertinente, quedó redactado así:

"Los domingos, durante todo el día; excepto cuando fueren domingos los días 24 de diciembre, y *primero* y 5 de enero; . . . y los días 24 y *31 de diciembre* y 5 de enero de cada año, desde las 10 p. m., permanecerán cerrados al público; y una hora después de cerrados, no se permitirá ninguna clase de trabajo para los empleados en los establecimientos comerciales e industriales, . . ." (Bastardillas nuestras.)

Obsérvese que según el citado párrafo, cuando el día de Año Nuevo cae domingo, los establecimientos y empresas comerciales e industriales no exceptuados podrán permanecer abiertos durante todo el día, sin limitación de hora. En cambio, cuando cae cualquiera otro día, el día de Año Nuevo deben cerrarse los establecimientos desde las doce del día por ser día de fiesta legal. Se comprende que el absurdo de permitir abrir ese día cuando cae domingo y obligar a cerrar cuando cae otro día no pudo ser la intención del legislador. Se notará que más adelante en el mismo párrafo se especifica que los días 24 y 31 de diciembre y 5 de enero (omite el día primero de enero) se cerrarán los establecimientos desde las diez de la noche. El mismo error subsiste en las leyes enmendatorias de 1930 y 1937.

blecimientos *exceptuados por la ley,* que prestan sus servicios sobre la base de un salario anual, mensual, semanal o en cualquier forma que no sea por jornal o ajuste a un tanto alzado.

Siendo ésta, a nuestro juicio, la correcta interpretación de la Ley, el querellante no tenía derecho al día de descanso con salario íntegro por cada seis días de trabajo, y como de acuerdo con su contrato él recibía doce dólares semanales, incluyendo el trabajo de los domingos, erró la corte al concederle compensación extra por el trabajo de los domingos. *Cardona* v. *Corte,* supra, y *Muñoz* v. *Corte,* supra.

*Procede modificar la sentencia apelada, deduciendo la cantidad de $322.20 que se le concedió al querellante por virtud de las cuatro horas trabajadas durante los domingos, quedando reducida la sentencia a la cantidad de $237, y así modificada, se confirma.*