José y JUAN LABOY MONTES, querellantes y apelantes, *v.* CORPORACIÓN AZUCARERA SAURÍ & SUBIRÁ, querellada y apelada.

Núm. 9134.—*Sometido:* Mayo 23, 1945. *Resuelto:* Noviembre 27, 1945.

*R. Hernández Matos,* abogado de los apelantes; *Francisco Parra Capó* y *Leopoldo Tormes García,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

José y Juan Laboy Montes empezaron a trabajar para la corporación azucarera Saurí & Subirá desde que esa Corporación inició sus negocios en el año 1919. Ambos empezaron con un salario de $10 semanales y a virtud de sucesivos aumentos, al retirarse el primero el 20 de febrero de 1944 ganaba $50 semanales como mayordomo de fábrica y

cuando se retiró el segundo el 15 de julio del mismo año ganaba $25 semanales, como mayordomo de plaza.

La evidencia demostró que el salario fijado a los apelantes comprendía los siete días de la semana y admiten que les fué pagado religiosamente mientras estuvieron trabajando para la apelada. Su única contención es que de conformidad con el art. 553 del Código Penal, las fábricas de azúcar están exentas de suspender sus trabajos los domingos y como el trabajo de los querellantes lo verificaban en relación con la fábrica de azúcar de la querellada, cada uno de ellos tenía derecho a un día de descanso íntegro por cada seis días trabajados; que si bien sus contratos de trabajo comprendían los siete días de la semana, sin embargo, no se les había dado el día de descanso a que alegan tener derecho, y por esa razón reclaman el valor del trabajo que cada uno hizo durante los días de descanso. La corte municipal dictó sentencia a favor de los querellantes, pero la corte de distrito la revocó fundándose en que la preponderancia de la evidencia demostraba que los querellantes nunca trabajaron los domingos. Como no se trataba de una reclamación de salarios agrícolas, los querellantes instaron el presente recurso de apelación.

A pesar de que los obreros en su querella alegan que trabajaron todos los días durante cada año, sin embargo, la evidencia demuestra que durante el tiempo muerto los querellantes no trabajaron los domingos. Los propios querellantes lo admiten así en su alegato cuando dicen:

"Una vez demostrado que los querellantes trabajaron para la querellada a base de un sueldo semanal, en zafra los siete días a la semana *y en tiempo muerto seis días* [la corte de distrito] no tenía otra alternativa que la de declarar con lugar la querella *y concederla en la medida demostrada por la evidencia.*" (Alegato de los apelantes, pág. 93.) (Subrayado nuestro.)

En lo que al tiempo de la zafra respecta, no podemos convenir con la corte inferior en cuanto asegura que la evi-

dencia también demuestra que los querellantes no trabajaron los domingos. La evidencia de los querellantes sostiene que durante la zafra ellos trabajaban los siete días de la semana, y la de la querellada también tiende a sostener esa contención, como puede verse de las siguientes contestaciones del administrador de la querellada, a saber:

"P.—Estos dos señores [los querellantes] ¿trabajaban los días domingos durante el tiempo muerto? R.—Muy raras veces. P.— ¿Y durante el tiempo de zafra? R.—La mayor parte del tiempo se trabaja, pero también hay días que no se trabajaba los domingos. (T. de E., pág. 197).

"P.—¿Usted les concedía los días de descanso? ¿En zafra ellos podían irse los domingos? R.—Podían irse donde quisieran. Tenían bastante autoridad para hacer muchas cosas. P.—Por ejemplo, los domingos, ¿ellos podían irse realmente sin perjudicar el trabajo de la fábrica? R.—Si había un domingo moliendo y alguno quería salir, arreglaba sus cosas de manera que pudiera salir. P.—¿Usted no puede recordar ahora los domingos que ellos salieron? R.—No." (T. de E., pág. 209).

Parece claro que durante la zafra los querellantes trabajaban los domingos. Es cierto que si tenían que salir un domingo podían hacerlo, pero para ello era preciso que hicieran arreglos de modo que su ausencia no perjudicase el trabajo. Siendo ello así, erró la corte sentenciadora al apreciar la evidencia en el sentido de que los querellantes no trabajaban los domingos.

Resultando de la evidencia el tiempo que duró cada zafra sería factible computar los días de descanso trabajados. Pero como la querellada atacó la constitucionalidad de la ley que obliga al patrono de ciertas empresas a conceder a sus obreros o empleados un día de descanso con salario íntegro por cada seis de trabajo, y en caso de ser inconstitucional, los demandantes no tendrían derecho a un fallo a su favor, estamos obligados a pasar sobre la validez de la ley.

Alega la querellada que la ley es inconstitucional porque: (*a*) existe una fatal discrepancia entre su título y su texto; y (*b*) porque en lo que que respecta a la concesión del día de descanso con salario íntegro, niega a la corporación la igual protección de la ley y la priva de su propiedad sin el debido procedimiento.

Estas dos cuestiones fueron suscitadas contra la misma ley y hábilmente discutidas por los abogados de la demandante en el caso de *Cía. Popular* v. *Corte*, 64 D.P.R. 383. Fué innecesario entonces considerar las cuestiones constitucionales porque el caso podía resolverse, como se resolvió, a favor de la Compañía Popular por otros fundamentos. En el presente es inevitable pasar sobre la constitucionalidad de la ley.

En el caso de *Rodríguez* v. *Corte*, 60 D.P.R. 919, tuvimos oportunidad de estudiar, en relación con otra ley, el precepto constitucional relativo al título de las leyes. Dijimos entonces:

"Prescribe nuestra Ley Orgánica en su artículo 34 que 'no se aprobará ningún proyecto de ley, con excepción de los de presupuesto general, que contenga más de un asunto, *el cual deberá ser claramente expresado en su título;* pero si algún asunto que no esté expresado en el título fuese incluído en cualquier ley, esa ley será nula solamente en aquella parte de ella que no haya sido expresada en el título'.

"Si nos detenemos a examinar el precepto constitucional transcrito, observaremos que requiere que el asunto de una ley sea *claramente expresado* en el título y que aunque hace la salvedad de que si algún asunto que no esté expresado en el título fuese incluído en el cuerpo de la ley ésta será nula solamente en aquella parte de la misma que no hubiere sido expresada en el título, . . . . Y es que el título de una ley tiene por objeto informar al público en general y a los legisladores en particular, el asunto que es objeto de la ley, de forma que el primero pueda oponerse a su aprobación si la considera lesiva a sus intereses y los segundos estén en condiciones de emitir su voto conscientes del asunto objeto de legisla-

ción. La necesidad de que el título de la ley refleje fielmente el contenido de la misma, surge diáfana de otro apartado del mismo artículo 34, supra, que dice así:

" 'El Presidente de cada Cámara firmará, en presencia de la Cámara que presida, todos los proyectos de ley y resoluciones conjuntas aprobados por la Asamblea Legislativa, *después que sus títulos hayan sido leídos públicamente,* inmediatamente antes de firmar; y el hecho de firmar se hará constar en el acta.' (Bastardillas nuestras.)

"Aplicando el precepto constitucional que nos ocupa, la Corte de Circuito de Apelaciones, Primer Circuito, en el caso de *Martínez* v. *People of Puerto Rico,* 46 F.2d 427, 429, procedente de este Tribunal, dijo:

" 'No vemos cómo los que votaron la ley pudieron ser inducidos a error por el título.'

"No se entienda que sostenemos que el título debe contener una minuciosa descripción de la ley. Basta que exprese en términos generales cuál es su objeto, *Rodríguez* v. *P. R. Ry., Lt. & Power Co.,* 30 D.P.R. 931, siempre que, desde luego, no induzca a error. Como gráficamente se dijo en el caso últimamente citado, el título debe ser 'un poste indicador' de lo que contiene la ley. Véase *Posados* v. *Warner, B. & Co.,* 279 U. S. 340, donde interpretando la cláusula tercera de la Ley Orgánica de Filipinas dispositiva de que 'ningún proyecto de ley se convertirá en ley cuando contenga más de un asunto, y que el objeto de la ley será expresado en su título' dijo el Tribunal Supremo de los Estados Unidos que el propósito de ese principio constitucional 'es impedir la inclusión en la ley de materia incongruente y extraña a la vez que poner en guardia contra la inadvertencia, la ocultación y el fraude en la legislación. Cuando los proyectos de ley se ajustan a tales requerimientos, sus títulos sirven convenientemente para informar a los legisladores y al público de los asuntos bajo su consideración' ".

La ley envuelta en el presente caso es el art. 553 del Código Penal. Este precepto legal se originó en una Ley de la Asamblea Legislativa de Puerto Rico aprobada el 10 de febrero de 1902, para empezar a regir el primero de marzo siguiente (Laws and Resolutions Passed by the Second Session of the Legislative Assembly of Porto Rico, p. 89), cuyo título en inglés dice así: "An Act Providing for the Closing of Certain Commercial and Industrial Establishments on

Sunday After Twelve O'Clock Noon, and Fixing Penalties for Infractions of the Provisions Thereof".(¹) Esta Ley consiste de seis secciones. Al aprobarse el Código Penal el 1ro. de marzo de 1902 para empezar a regir el 1ro. de julio del mismo año a las doce del día, la Asamblea Legislativa incorporó íntegramente en dicho Código, la sección 1 de la referida Ley, bajo el Título XIX, "Cierre de Establecimientos los Domingos", pasando a ser dicha sección 1 el art. 553 del Código Penal. Dicho artículo decía así:

"Artículo 553.—Que todos los domingos, después de las doce del día, permanecerán cerrados y sin efectuar transacciones de ninguna especie, los establecimientos comerciales e industriales, con excepción de los mercados públicos, farmacias, panaderías, hoteles, restaurants, cafés, y lugares donde sólo se venden refrescos, exceptuándose también las empresas de utilidad pública y cuasi pública y trabajos urgentes y necesarios para evitar inusitadas y considerables pérdidas de dinero. Pero esta prohibición no se hará extensiva a los teatros, ni a otros lugares dedicados exclusivamente a recreo o a fines de caridad, en los cuales sitios será legal trabajar a toda hora durante los domingos, pero solamente en pro de dichos fines de caridad o para ayudar a proporcionar recreos."

En la Compilación de los Estatutos Revisados y Códigos de Puerto Rico de 1911, continuó el art. 553 del Código Penal redactado según aparecía en los Estatutos Revisados y Códigos de Puerto Rico de 1902.

En 1913, por la Ley núm. 57 de 13 de marzo de ese año, pág. 96, y más tarde en el mismo año por la Ley núm. 131 de 9 de agosto (Sesión Extr., pág. 88), y luego por la Ley núm. 24 de 28 de marzo de 1914 (pág. 177) el art. 553 del Código Penal fué enmendado y el título de las dos primeras leyes enmendatorias decía así: "Ley Para Enmendar el Artículo 553 del Código Penal", y el de la de 1914 decía así: "Ley Para Enmendar el Artículo 553 y Restablecer el Artículo 554 del Código Penal".

Prescribe el art. 34 de la Ley Orgánica:

---

(¹)No disponemos de la edición española.

"No se aprobará ningún proyecto de ley, con excepción de los de presupuesto general, que contenga más de un asunto, el cual deberá ser claramente expresado en su título; pero si algún asunto que no esté expresado en el título fuere incluído en cualquier ley, esa ley será nula solamente en aquella parte de ella que no haya sido expresada en el título".

Como las enmiendas de que fué objeto el art. 553 del Código Penal en los años 1913 y 1914 estaban relacionadas con el asunto original de dicho artículo, el título de dichas leyes cumplía con los requisitos del art. 34 de la Ley Orgánica. Interpretando preceptos constitucionales similares al del art. 34 de nuestra Ley Orgánica, se ha resuelto que siempre que la materia enmendatoria sea congruente con el asunto de la ley original, un título como el de las Leyes de 1913 y 1914 antes mencionadas, cumple con el requisito constitucional. A contrario sensu, si la materia enmendatoria constituye una clara desviación y un cambio completo del asunto de la ley original, en tales circunstancias un título como el indicado infringe el precepto constitucional. *Praetorians* v. *State*, 184 S. W. 2d 299 (Tex. 1944) ; *First National Bank of Corvallis* v. *Benton County*, 154 P.2d 841 (Or. 1944) ; *Benedicto* v. *Porto Rican American Tobacco Co.*, 256 F. 422 (C. C.A. 1st. Circ. 1919) y *Domenech* v. *Porto Rican Leaf Tobacco Co.*, 50 F.2d 579 (C.C.A. 1st. Circ. 1931).

Fué en la Ley de 1917 donde se operó el cambio que ha dado lugar a este ataque a la validez de cierta parte de la Ley. En dicha fecha la Ley núm. 26 de 23 de noviembre de ese año (Sesión Extr., 1917, pág. 273), titulada "Ley Para Enmendar el Artículo 553 del Código Penal, Derogar el Artículo 554 de Dicho Código y Para Otros Fines", concedió como día de descanso la totalidad del Día del Trabajo (Labor Day) y del 4 de Julio, y ordenó el cierre los sábados desde las nueve de la noche en vez de las diez de la noche. En los demás días los establecimientos no exceptuados volvieron a cerrarse desde las seis de la tarde. Si el contenido de esa Ley de 1917 hubiera sido solamente el que acabamos

de indicar, no habría duda que su título hubiera cumplido con las disposiciones del art. 34 de la Ley Orgánica. Pero en esa Ley de 1917 la Asamblea Legislativa no se limitó a enmendar el art. 553 y a derogar el 554 como decía su título, sino que intercaló una sección 3 que dice así:

"Sección 3.—Los empleados y dependientes de las empresas y establecimientos no exceptuados por esta Ley, que presten sus servicios sobre la base de un salario anual, mensual, semanal o en cualquier otra forma que no sea por jornal o ajuste a un tanto alzado, tendrán derecho a un día de descanso por cada seis de trabajo, con salario íntegro."(2)

Es de notar que la sección 3 arriba transcrita constituye una clara desviación del asunto original del art. 553 del Código Penal. Salta a la vista que el asunto de la sección 3 es de carácter puramente civil y quien lee el título de la Ley núm. 26 de 23 de noviembre de 1917, difícilmente podrá sospechar que a un artículo del Código Penal se le haya adicionado una materia de naturaleza estrictamente civil. El título de la Ley de 1917 en ninguna forma indica que fuera el objeto de la enmienda que el patrono concediese a su empleado un día de descanso con salario íntegro por cada seis de trabajo.

Conviene agregar que la frase "Y Para Otros Fines" con que termina el título de la Ley de 1917 no subsana el defecto apuntado. Como se dice en 1 Sutherland, *Statutory Construction* (rev. ed. 1943) sección 1714:

"Aunque términos como 'etcétera' y 'para otros fines' frecuentemente se usan en los títulos de las leyes, tales frases tienen muy poco efecto sobre la validez de los estatutos. Aunque estos términos pueden servir para advertir que materias adicionales a las especificadas en el título aparecen en la ley, tales términos no pueden convalidar la inclusión de disposiciones incongruentes. Además

---

(2)Para un estudio del proceso evolutivo del art. 553 del Código Penal véase *Parrondo v. L. Rodríguez & Co.,* 64 D.P.R. 438, donde, entre otras cosas, resuelve que el vocablo "no" que aparece en la sección 3 arriba transcrita, aparece en dicha sección por error, y debe considerarse como inexistente.

cualesquiera disposiciones que estén íntimamente relacionadas con el asunto general de la ley pueden ser incluídas sin el auxilio de estas frases de sentido general."

No estando expresada en el título de la Ley de 1917 la materia objeto de la sección 3 y constituyendo dicha materia una desviación del asunto de la ley original, nos vemos obligados a sostener que dicha sección infringe el art. 34 de la Ley Orgánica. Siendo nula la sección 3 de la cual nace el alegado derecho de los demandantes a recibir compensación por el día de descanso que no le fué concedido, *procede, aunque por fundamentos distintos de los expresados por la corte inferior, confirmar la sentencia apelada.*