FERNANDO SIERRA BERDECÍA, COMISIONADO DEL TRABAJO DE PUERTO RICO, en representación y para beneficio del obrero RAFAEL VIZCARRONDO, peticionario, v. TRIBUNAL DE DISTRITO DE PUERTO RICO, SECCIÓN DE SAN JUAN, HON. EMILIO S. BELAVAL, JUEZ, demandado; THE SHELL COMPANY, interventora.

Número 1954.

*Sometido:* 1 de octubre de 1952. *Resuelto:* 14 de noviembre de 1952.

*Joaquín Gallart Mendía* y *Domingo Candelario,* abogados del peticionario; *Fernando Ruiz Suria,* abogado de la interventora, querellada en el pleito principal.

El Juez Asociado Señor Ortiz emitió la opinión del tribunal.

El peticionario en este caso radicó en el antiguo Tribunal Municipal de Puerto Rico, Sala Primera de San Juan, una querella en representación y para beneficio del obrero Rafael Vizcarrondo. En ella se alega y solicita lo siguiente:

"2. El obrero Rafael Vizcarrondo trabajó para la querellada en un negocio lucrativo de suministro de combustible a distintas líneas aéreas en San Juan, Puerto Rico, desde noviembre de 1946 a octubre de 1949, operando dicho negocio durante los siete días de la semana, a virtud de un permiso concedido por el Comi-

sionado querellante a la querellada para emplear trabajadores en la prestación de ese servicio durante los domingos y días feriados, a tenor de las disposiciones de la. Ley núm. 80 aprobada en 5 de mayo de 1931.

"3. En su referido empleo Rafael Vizcarrondo trabajó en los séptimos días (días de descanso) durante las horas y por los salarios relacionados en el *Exhibit* I que se une a la presente querella, haciéndose formar parte integrante de la misma.

"4. La querellada pagó a Rafael Vizcarrondo las referidas horas trabajadas en tales séptimos días a un tipo sencillo de salario cuando venía obligada a pagarlas a tipo doble a tenor de lo dispuesto por la Ley núm. 289 aprobada en 9 de abril de 1946 y la Ley 379 aprobada en 15 de mayo de 1948, adeudándole al obrero Rafael Vizcarrondo la diferencia, cuyo importe asciende a la suma de $113.41, suma que la querellada se niega a pagarle a pesar de las múltiples gestiones y requerimientos hechos al efecto por el querellante.

"5. La querellada viene obligada a pagar a Rafael Vizcarrondo otra suma igual a la precedentemente reclamada por concepto de liquidación de daños y perjuicios, de acuerdo con las disposiciones de la referida Ley núm. 379 de 1948.

"Por todo lo cual, el querellante de este Honorable Tribunal respetuosamente solicita se sirva dictar sentencia declarando con lugar la presente querella y, en su consecuencia, condenando a la querellada a pagar al obrero Rafael Vizcarrondo la suma de $226.82."

Contestó la querella aceptando algunos y negando otros de los hechos alegados en la querella y, finalmente, el tribunal admitió una estipulación de hechos presentada por las partes, con lo cual quedó el caso sometido. El Tribunal Municipal dictó sentencia declarando sin lugar la querella, entablando el aquí peticionario apelación para ante el anterior Tribunal de Distrito de Puerto Rico, Sección de San Juan.

Bajo las mismas condiciones expuestas, las partes sometieron el caso para resolución de este último tribunal.(¹)

---

(¹) La estipulación de hechos sometida por las partes lee así:

"Comparecen las partes en este caso, representadas por sus respectivos abogados que suscriben y por medio de la presente estipulan los siguientes hechos:

Dictó sentencia el tribunal de distrito declarando sin lugar la querella. Como conclusiones de hecho, expuso el juez recurrido las siguientes:

"1. Que el obrero querellante Rafael Vizcarrondo recibió un día de descanso en cada semana de calendario comprendida

"1. Que el obrero Rafael Vizcarrondo en cuya representación y para beneficio de quien el Comisionado del Trabajo de Puerto Rico establece la presente querella, durante las fechas en que trabajó para la querellada (desde noviembre de 1946 hasta octubre de 1949) recibió un día de descanso en cada semana calendario.

"2. Que no obstante haber disfrutado el obrero Rafael Vizcarrondo de un día de descanso en cada semana calendario, la querellada The Shell Co. (Puerto Rico) Limited acepta que durante los períodos indicados en el Exhibit I que se hace formar parte de la querella, el obrero Vizcarrondo trabajó *consecutivamente* siete o más días sin disfrutar de uno de descanso al cabo de seis de trabajo, tal como lo exige la Ley 289 de 9 de abril de 1946.

"3. Las partes convienen en ilustrar por vías del siguiente ejemplo el alcance de lo estipulado en los dos párrafos anteriores:

"EJEMPLO.

"Un obrero trabaja para su patrono y recibe el lunes 1ro. de septiembre de 1947 como día de descanso. Luego trabaja consecutivamente desde el martes 2 hasta el viernes 12 del mismo mes y año, concediéndosele el sábado 13 como día de descanso. Véase que el obrero ha recibido un día libre en cada una de estas dos semanas calendario (párrafo 1ro. de esta estipulación) pero ha trabajado ininterrumpidamente desde el martes 2 de septiembre hasta el viernes 12 del mismo mes, o sea un total de 10 días consecutivos (sic) sin disfrutar de un día de descanso al cabo de 6 días de trabajo como lo prescribe la Ley 289 de 9 de abril de 1946 (párrafo 2do. de esta estipulación).

"4. Se estipula entre las partes que la querellada The Shell Company (Puerto Rico) Limited es una empresa comercial que está sujeta a cumplir con las disposiciones del artículo 553 del Código Penal de Puerto Rico, y que estaba sujeta a tales disposiciones durante los distintos períodos cubiertos por la reclamación en este caso.

"5. Las partes además estipulan que durante todos los períodos cubiertos por la reclamación en este caso la querellada The Shell Company (Puerto Rico) Limited tenía un permiso expedido a su favor por el Comisionado del Trabajo de Puerto Rico bajo la autoridad de la Ley núm. 80 de 1931, según enmendada, autorizándole a trabajar ciertos empleados durante los días domingo y demás días feriados por ley, entre los cuales estaba el querellante Rafael Vizcarrondo.

"6. Las partes someten al Honorable Tribunal este caso a base de las alegaciones y de esta Estipulación de Hechos, así como a base de los alegatos que en forma alternada ofrecerán oportunamente."

durante las fechas en que trabajó para la querellada desde noviembre de 1946 hasta octubre de 1949.([2])

"2. Que no obstante haber disfrutado el querellante de un día de descanso en cada semana de calendario, dicho obrero trabajó consecutivamente siete o más días sin disfrutar de uno de descanso al cabo de seis de trabajo durante los períodos indicados en el Exhibit I que se hizo formar parte de la querella.

"3. Que la querellada The Shell Company (Puerto Rico) Limited es una empresa comercial sujeta a cumplir con las disposiciones del artículo 553 del Código Penal de Puerto Rico (Ley del Cierre) y que estaba sujeta a tales disposiciones durante los distintos períodos cubiertos por la querella en este caso.

"4. Que durante todos los períodos cubiertos por la querella en este caso la querellada The Shell Company (Puerto Rico) Limited tenía expedido a su favor un permiso por el Comisionado del Trabajo de Puerto Rico bajo la autoridad de la Ley 80 de 1931, según enmendada, autorizándole a trabajar ciertos empleados los días domingo y demás días feriados por ley, entre cuyos empleados estaba el querellante Rafael Vizcarrondo."

Expresó el tribunal a quo en sus conclusiones de derecho que (1) la Ley núm. 289 aprobada el 9 de abril de 1946 ((1) pág. 683), según ha sido enmendada, no es aplicable a la querellada por operar ésta una empresa comercial sujeta a las disposiciones del artículo 553 del Código Penal (Ley del Cierre); y (2) que el permiso otorgado por el Comisionado del Trabajo al querellado, para trabajar con ciertos empleados (incluyendo al obrero querellante) en domingos y días feriados, no tiene el alcance, según alegó el querellante, de colocar a la querellada fuera del cumplimiento de la Ley del Cierre, ni el de sujetarla, por tanto, a cumplir con la Ley núm. 289 de 1946.

El peticionario imputa al tribunal inferior la comisión del siguiente error:

"El tribunal inferior erró gravemente al concluir que bajo las disposiciones de la Ley núm. 289 de 9 de abril de 1946 y

([2]) La reclamación cubre el período de tiempo comprendido entre el día 13 de diciembre de 1946 y el día 10 de agosto de 1949.

de la Ley núm. 379 de 15 de mayo de 1948, una industria que está sujeta a las disposiciones de la Ley de Cierre (artículo 553 del Código Penal) pero que ha obtenido del Comisionado, hoy Secretario del Trabajo de Puerto Rico, el permiso para emplear obreros en días festivos dispuesto por la Ley núm. 80 de 5 de mayo de 1931, según enmendada, cumple con las referidas leyes números 289 y 379 al concederle a tales empleados un día de descanso en cada semana de calendario, no viniendo obligada a concederle a los mismos un día de descanso después de seis días consecutivos de trabajo y de no hacerlo así a pagarles las horas trabajadas en dicho séptimo día a tiempo doble."

▬▬ El artículo 553 del Código Penal, tal como ha sido enmendado, dispone, en parte, lo siguiente:

"Los domingos, durante todo el día excepto cuando fueren domingos los días 24 de diciembre, y primero y 5 de enero; el primer lunes de septiembre (*Labor Day*), y el día 4 de julio; los días de fiesta legal desde las 12 a. m.; todos los sábados desde las 9 p. m.; todos los días laborables desde las 6 p. m. y los días 24 y 31 de diciembre y 5 de enero de cada año, desde las 10 p. m., permanecerán cerrados al público; y una hora después de cerrados, no se permitirá ninguna clase de trabajo para los empleados en los establecimientos comerciales e industriales, con excepción de los designados a continuación: . . ."

Se enumeran a continuación los establecimientos comerciales e industriales expresamente exceptuados de los alcances de la ley. La sección 2 de dicho artículo, tal como fué enmendado por la Ley núm. 110 de 1937 (Leyes de 1936–37, pág. 268), dispone lo siguiente:

"Los empleados y dependientes de las empresas y establecimientos exceptuados por la ley, que presten sus servicios a base de un salario anual, mensual, semanal o en cualquier forma, que no sea por jornal o ajuste a un tanto alzado, tendrán derecho a un día de descanso por cada seis de trabajo, con salario íntegro." ([3])

---

([3]) Tal como disponía esta sección anteriormente, ésta se refería literalmente a empresas y establecimientos no exceptuados por la ley. Tal disposición ha sido interpretada por este Tribunal en el sentido de que

Ambas partes han estipulado que la interventora en este caso, o sea, el patrono del peticionario, es uno de los establecimientos sujetos a las disposiciones del artículo 553 y que estaba sujeto a tales disposiciones durante los distintos períodos comprendidos por la reclamación en este caso. Sin embargo, también se estipuló que la interventora tenía un permiso expedido a su favor por el Comisionado del Trabajo de Puerto Rico bajo las disposiciones de la Ley núm. 80 de 1931 (pág. 497), según ha sido posteriormente enmendada, autorizándolo a utilizar al obrero querellante durante los días domingo y demás días feriados por ley. Tal Ley núm. 80 de 1931 fué enmendada por la Ley núm. 24 aprobada el 15 de noviembre de 1935 ((1) pág. 189), aplicable a este caso en cuanto al período de tiempo envuelto en la reclamación, de 13 de diciembre de 1946 al 14 de mayo de 1947, en cuya fecha se aprobó otra ley enmendatoria, que veremos más adelante. La referida Ley núm. 24 de 1935 dispone, en parte, lo siguiente:

"Sección 1.—Por la presente, el Comisionado del Trabajo queda autorizado para conceder permisos a los patronos o dueños de establecimientos industriales y *comerciales* para emplear obreros o *empleados* en las horas extras del día o de la noche que a juicio de dichos comisionados fueren necesarias con el fin de permitir a dichos patronos o dueños la terminación de trabajos urgentes o necesarios que deban efectuarse dentro del tiempo determinado en talleres, fábricas, factorías o cualquier establecimiento industrial o comercial en Puerto Rico.

"Cuando un patrono o dueño tuviere necesidad de acogerse a las disposiciones de esta Ley, procederá a notificar al Comi-

la palabra "no" había sido intercalada por inadvertencia y que, por lo tanto, la sección 2 debía interpretarse como refiriéndose a empresas y establecimientos exceptuados por la ley. *Parrondo* v. *L. Rodríguez & Co.,* 64 D.P.R. 438. Es interesante observar que en la Compilación de los Estatutos Revisados y Códigos de Puerto Rico de 1941 se incurre en el mismo error de intercalar la palabra "no" a pesar de que ella había sido eliminada por dicha Ley núm. 110, aprobada el 13 de mayo de 1937. La última enmienda hecha al referido artículo 553 del Código Penal se aprobó en virtud de la Ley núm. 250 de 9 de mayo de 1950 ((1) pág. 657), que no es aplicable en forma alguna a este caso.

sionado del Trabajo, y en ausencia de éste, al subcomisionado o persona que les esté sustituyendo al frente de dicho departamento, de que tal necesidad existe y del tiempo que necesita para la terminación del trabajo y el comisionado o subcomisionado o persona que lo sustituya al frente del departamento podrá extender el correspondiente permiso; *Disponiéndose,* que cualquier tiempo extra que fuere trabajado por las operarias, operarios o empleados de dichos establecimientos industriales o *comerciales,* una vez autorizados sus patronos o dueños de acuerdo con las disposiciones de esta Ley, *será pagado a razón de un tipo doble de salario por hora; Y disponiéndose, además,* que una vez concedido el permiso el Comisionado del Trabajo tendrá la facultad de investigar los motivos o razones que tuvo el patrono o dueño para hacer la solicitud; y si encontrare que los hechos se han falseado maliciosamente o que tal solicitud se hizo sin causa justificada, tales hechos constituirán un delito menos grave (*misdemeanor*) y dentro de los sesenta días subsiguientes a la concesión de tal permiso, podrá radicarse la correspondiente denuncia." (Bastardillas nuestras.)

En virtud de la Ley núm. 418 de 14 de mayo de 1947 ((1) pág. 843) se dispuso, en parte, lo siguiente:

". . . *Disponiéndose, que cualquier tiempo extra que fuere trabajado por los obreros o empleados de dichos establecimientos industriales o comerciales, una vez autorizados sus patronos o dueños de acuerdo con las disposiciones de esta Ley, será pagado a razón de un tipo doble de salario por hora,* si los referidos obreros o empleados hubieran trabajado en ese mismo día durante un período total de ocho o más horas, y un tipo sencillo de salario si se tratare de obreros o empleados que no hubieren trabajado durante las ocho horas, inmediatamente precedentes al período de trabajo extra. Será deber de todo patrono o dueño de establecimiento a quien se le hubiere expedido un permiso, enviar al Departamento del Trabajo, dentro del término de diez (10) días, después de realizado el trabajo un duplicado de la nómina de los empleados utilizados por el mismo, en la cual se hará constar bajo juramento el nombre de todos los empleados, su dirección, concepto del trabajo realizado, tiempo y salarios pagados. *Y disponiéndose, además,* que, una vez concedido el permiso, el Comisionado del Trabajo tendrá la facultad de investigar los motivos o razones que tuvo el

patrono o dueño para hacer la solicitud; y si encontrare que
los hechos se han falseado maliciosamente o que tal solicitud
se hizo sin causa justificada, tales hechos constituirán un delito
menos grave (*misdemeanor*) y dentro de los sesenta días sub-
siguientes a la concesión de tal permiso, podrá radicarse la
correspondiente denuncia." (Bastardillas nuestras.)

Hasta el 15 de mayo de 1948, fecha en que se aprobó la
Ley núm. 379 ((1) pág. 1255), los derechos de los obreros
de empresas o establecimientos sujetos al ya citado artículo
553 del Código Penal, cuando esos obreros trabajaban en
ocasiones prohibidas expresamente por la ley pero con el per-
miso del anterior Comisionado del Trabajo, se determinaban
de acuerdo con las leyes ya transcritas. Sin embargo, la Ley
núm. 379 de 1948, que proveía compensación doble por cada
hora extra trabajada, dispuso, en parte, lo siguiente:

"Artículo 4.—Son horas extras de trabajo:
". . . . . . . .
"(*d*) las horas que un empleado trabaja para su patrono
durante los días u horas en que el establecimiento en que presta
servicio deba permanecer cerrado al público por disposición
legal; *Disponiéndose, sin embargo,* que no serán horas extras las
horas que el empleado trabaja para su patrono durante los días
u horas en que el establecimiento deba permanecer cerrado al
público cuando el patrono ha obtenido del Comisionado del Tra-
bajo el permiso requerido por la Ley núm. 80 de 5 de mayo de
1931, según ha sido o fuere subsiguientemente enmendada, y la
totalidad de horas trabajadas por el empleado durante ese día
no exceda de ocho horas ni la totalidad de horas trabajadas
durante la semana exceda de cuarenta y ocho horas.
"(*e*) las horas que un empleado trabaja para su patrono
durante el día de descanso que se haya fijado o se fijare por ley
en el caso de industrias y negocios que no están sujetos al cierre
de su establecimiento."

La Ley núm. 188 de 6 de mayo de 1949 ((1) pág. 595)
enmendó de nuevo la Ley núm. 80 de 1931 referente al per-
miso concedido por el Comisionado del Trabajo y dispuso en
parte que las horas extras trabajadas y la compensación al
trabajo realizado a virtud de tales permisos serán determi-

nadas y pagadas de acuerdo con las disposiciones de la ya citada Ley núm. 379 de 15 de mayo de 1948.

Sin embargo, lo que alega el obrero reclamante es que su caso está cubierto por la Ley núm. 289 aprobada el 9 de abril de 1946. La sección 1 de dicha ley dispone lo siguiente:

"Todo empleado de cualquier establecimiento comercial o industrial, empresa o negocio lucrativo que no estuviere sujeto a las disposiciones sobre cierre al público del artículo 553 del Código Penal de Puerto Rico, según ha sido subsiguientemente enmendado, tendrá derecho a un día de descanso por cada seis (6) días de trabajo.

"A los efectos de esta Ley, se entenderá por día de descanso un período de veinticuatro (24) horas consecutivas."

La sección 4 de la referida ley dispone:

"Todo patrono que emplee o permita que un empleado trabaje durante el día de descanso que se establece en esta Ley vendrá obligado a pagarle por las horas trabajadas durante dicho día de descanso un tipo de salario igual al doble del tipo convenido para las horas regulares."

El obrero querellante no formula su reclamación a base de la compensación que se le debe pagar por su trabajo efectuado los días domingo y demás días feriados permitidos por el Comisionado, sino que alega que a pesar de él haber disfrutado de un día de descanso en cada semana de calendario, como él trabajó consecutivamente siete o más días sin disfrutar de ninguno de descanso al cabo de seis días de trabajo durante el período cubierto en la reclamación, [4] la

---

[4] El ejemplo incorporado a la estipulación sirve de ilustración en cuanto a las alegaciones del obrero querellante. Por ejemplo, él recibe el lunes día 1ro. de septiembre de 1947 como día de descanso y luego trabaja consecutivamente desde el martes 2 hasta el viernes 12 del mismo mes y año, concediéndosele el sábado 13 como día de descanso. En cada semana él recibía un día libre, pero trabajaba por diez días consecutivos sin disfrutar de un día de descanso al cabo de seis días de trabajo, siendo ésta la situación a que se refiere la ya citada Ley núm. 289 de 1946. El obrero no ha planteado cuestión alguna referente a la compensación que se le debe pagar por su labor durante los domingos, pero sí solicita que se le pague la compensación doble por el trabajo efectuado por él cada séptimo día después de seis días consecutivos de trabajo.

ya citada Ley núm. 289 de 1946 es aplicable a las circunstancias de este caso. Tal ley es aplicable exclusivamente a los empleados de empresas y establecimientos que no estuvieren sujetos a las disposiciones del artículo 553 del Código Penal. Tal como se estipuló por ambas partes, la interventora estaba sujeta a las referidas disposiciones. El hecho de que el Comisionado del Trabajo le hubiese concedido un permiso a la interventora para emplear obreros o empleados en las horas extras del día o de la noche, aun los domingos y días feriados, no implica el que la interventora estuviese exceptuada de las disposiciones del artículo 553. El propio artículo señala específica y expresamente cuáles son las empresas y establecimientos que no están sujetos a tal articulado. De acuerdo con la propia Ley núm. 80 de 1931, según enmendada, el permiso concedido por el Comisionado del Trabajo es provisional y transitorio y se refiere a situaciones de emergencia con respecto a la terminación de trabajos urgentes o necesarios que deban efectuarse dentro de un tiempo determinado. Esa autorización concedida al Comisionado en cuanto a conceder tales permisos a patronos no implica el poder y la facultad para determinar qué industrias deben estar permanentemente sujetas a la ley, o cuáles deben ser consideradas como exceptuadas. Durante la vigencia del permiso el patrono interventor estaba autorizado, provisionalmente, a no cumplir con las disposiciones del artículo 553, pero tal exención transitoria no lo colocaba en la categoría de una empresa no sujeta a la referida disposición legal.

En *Cardona* v. *Corte*, 62 D.P.R. 61, 72–73, se dijo lo siguiente:

"La Ley núm. 80, Leyes de Puerto Rico, 1931 (pág. 497), según fué enmendada por la Ley núm. 24, Leyes de Puerto Rico, 1935 ((1) pág. 189), autoriza al Comisionado del Trabajo para conceder permisos a los patronos en establecimientos comerciales o industriales para emplear personas en las horas extras del día o de la noche con el fin de terminar trabajo urgente o

necesario que debe efectuarse dentro de un período determinado. Este estatuto dispone un tipo doble de compensación por cada hora así trabajada. La Ley núm. 80 evidentemente fué el producto de la experiencia adquirida bajo el artículo 553. Habiéndose descubierto que era en beneficio de toda la comunidad el permitir que tales establecimientos permanecieran abiertos para poder terminar el trabajo bajo ciertas circunstancias *especiales,* se dispuso que se podía obtener *temporalmente* la suspensión de la ley mediante permiso del Comisionado. Pero para proteger al trabajador contra indulgencia excesiva del Comisionado hacia los patronos, la ley dispone doble compensación por tal trabajo. Como resultado, un patrono no estaría dispuesto a solicitar un permiso excepto en un caso *bona fide* de emergencia." (Bastardillas nuestras.)

Entendemos que la intención legislativa al aprobarse la Ley núm. 289 de 1946 fué la de hacerla aplicable a aquellas empresas o establecimientos que no estuviesen sujetos a las disposiciones del artículo 553 del Código Penal, de acuerdo con los propios términos de dicho articulado. No fué la intención del legislador el hacer tal ley aplicable a las situaciones temporeras que surgiesen al amparo de la Ley núm. 80 de 1931, según enmendada. La propia historia legislativa de las leyes que ya hemos citado así nos lo demuestra. La Ley núm. 289 de 1946 que se pretende aplicar a este caso no hace mención alguna de la Ley núm. 80. Como ya hemos visto, la tantas veces mencionada Ley núm. 80 de 1931 fué enmendada de nuevo por la Ley núm. 418 de 14 de mayo de 1947, o sea, con posterioridad a la núm. 289 de 1946, al efecto de disponer que cualquier tiempo extra que fuere trabajado por obreros de establecimientos autorizados por el Comisionado, será pagado a un tipo doble de salario por hora, si los referidos obreros hubieren trabajado en ese mismo día durante un período total de ocho o más horas. No se hace mención alguna de la Ley núm. 289 de 1946, que se refiere a establecimientos no sujetos al artículo 553. Se trata, por lo tanto, de dos situaciones distintas que envuelven distintas normas en cuanto a la compensación a ser

pagada. En el año 1949 se enmendó de nuevo la ya citada Ley núm. 80 de 1931, en virtud de la núm. 188 de 1949, y se dispone que la compensación por horas extras trabajadas bajo permiso del Comisionado será determinada de acuerdo con las disposiciones de la Ley núm. 379 de 15 de mayo de 1948, que es una ley general de horas extras, y no se hizo referencia alguna a la núm. 289 de 1946. Con posterioridad a esta última ley, el legislador ha insistido en enmendar la Ley núm. 80 de 1931 en forma separada e independiente de la núm. 289 de 1946. Todo ello indica que la Ley núm. 80 de 1931, según enmendada, se refiere a una situación especial, independiente de y distinta al campo de acción cubierto por la ley que se pretende aplicar a este caso. Otra confirmación de este criterio la encontramos al observar que en el inciso (d) del artículo 4 de la Ley general de horas extras (núm. 379 de 15 de mayo de 1948), se establece una fórmula especial en cuanto a la compensación por horas extras cuando el patrono ha obtenido un permiso especial del Comisionado del Trabajo bajo la Ley núm. 80, mientras que en el inciso (e) del mismo artículo se dispone que serán consideradas como horas extras sujetas a doble compensación las horas que un empleado trabaje para su patrono durante el día de descanso que se haya fijado o se fijare por ley en el caso de industrias y negocios que no estén sujetos al cierre de su establecimiento. Surge claramente de esa ley que el legislador le da un trato distinto a los empleados que trabajan para un patrono sujeto a un permiso del Comisionado y a los empleados que trabajan para patronos que no estén sujetos al artículo 553 del Código Penal.

▇▇▇ Se alega por el peticionario y querellante que el criterio que estamos adoptando destruye el propósito y la intención legislativa de beneficiar a los obreros, y le ocasiona un grave perjuicio a los obreros que están en la misma situación del reclamante en el caso de autos, ya que el querellante estaría obligado a trabajar, por ejemplo, por diez días con-

secutivos, sin que se le dé una compensación doble por el séptimo día a tono con lo dispuesto por la ya citada Ley núm. 289 de 1946.

En *Compañía Popular* v. *Unión de Trabajadores*, 69 D.P.R. 179, 184, 185-86, se dice lo siguiente:

"Precisa concluir que la Legislatura le concedió a los empleados que recibían paga por hora o por día en las industrias exentas de las disposiciones de la Ley del Cierre los mismos privilegios que tienen los empleados de las industrias que están obligadas a cerrar los domingos. Los patronos comprendidos en esta última categoría están obligados a conceder a sus empleados que trabajan por hora o por día un día de descanso el domingo; pero éstos sólo reciben la paga que se ganan trabajando los seis días. *Parrondo* v. *L. Rodríguez & Co.*, supra, pág. 449. Los empleados de las industrias exentas pueden o no trabajar el domingo, dependiendo de las necesidades de sus patronos específicos. Pero trabajando o no el domingo, bajo la Ley núm. 289 tienen derecho a un día de descanso—ya sea el domingo o algún otro día—después de trabajar durante seis días. Sin embargo, igual que en el caso de los empleados de las industrias no exentas, que descansan el domingo pero no reciben paga adicional por el mismo, la Ley núm. 289 provee un día de descanso para los empleados que trabajan por hora o por día en las industrias exentas sin paga adicional por el día de descanso.

". . . . . . . .

"La sección 4 refuerza esta interpretación de la sección 1 de la Ley núm. 289. Dispone que si un empleado trabaja su día de descanso, recibirá un tipo de salario igual al doble del tipo convenido para las horas regulares. Esto es penalidad o paga extra exactamente igual a aquélla que se encuentra en las leyes y decretos sobre salario mínimo y horas máximas. Se ordena paga doble solamente por trabajo extra, teniendo el tipo mayor de salario el propósito de desalentar el trabajo extra. Pero si no se realiza trabajo alguno fuera de las horas regulares, no hay paga por tiempo no trabajado. Y se desalienta, aunque si bien no se prohibe, la semana de siete días de trabajo, al disponer (1) un día de descanso sin paga después de seis días de trabajo y (2) paga doble si se trabaja el día de descanso.

"El resultado es que la Ley núm. 289 establece una semana normal de seis días de trabajo para las industrias exentas con el fin de igualar las condiciones de las últimas con aquéllas prevalecientes en las industrias corrientes. En ambas categorías de industrias el trabajo debe suspenderse en cierto momento —después de una semana de trabajo de seis días. Una industria no exenta no puede funcionar el domingo. Si un patrono exento opta por hacer uso de su privilegio de trabajar una semana de siete días, debe pagar por el séptimo día salario doble al tipo convenido para las horas regulares. Pero si trabaja a base de una semana de seis días, éste está exactamente en la misma posición que los patronos de las industrias corrientes.

"Resolver que bajo la sección 1 un empleado recibe paga por el séptimo día sin trabajarlo, sería frustrar la intención de la Legislatura expresada en la sección 4 al efecto de que el trabajo por el séptimo ·día deberá pagarse al doble del tipo sencillo. Es decir, según esa interpretación, un empleado que trabaja durante el séptimo día recibiría solamente paga sencilla en adición a la paga ordinaria a que ya tenía derecho sin trabajar. Y, como consecuencia, los patronos en las industrias exentas serían llevados a una semana de siete días o a una semana de cinco días, mientras que la Legislatura tuvo por miras por la Ley núm. 289 estimular el establecimiento de una semana normal de seis días aun para las industrias exentas. Por tanto parece claro de las secciones 1 y 4 que el empleado tiene derecho a un día de descanso sin paga."

El caso anteriormente citado no es aplicable a las circunstancias del de autos. En el caso citado la empresa estaba expresamente exceptuada de las disposiciones del artículo 553 del Código Penal, y era clara la aplicación de la Ley núm. 289 de 1946. Lo que se resolvió, en síntesis, fué que los trabajadores no tienen derecho a un día de descanso con paga pero que tendrán derecho a la compensación doble en caso que ellos trabajasen el séptimo día. Se indica, sin embargo, que fué el propósito de la Ley núm. 289 el desalentar una semana de siete días consecutivos de trabajo. Empero, si el legislador ha deseado establecer dos categorías distintas en cuanto a empresas y establecimientos expresamente exceptuados del artículo 553 del Código Penal y de empresas y

establecimientos que operan temporalmente bajo un permiso provisional del ahora Secretario del Trabajo, no es nuestra misión el establecer una norma distinta a la fijada por el legislador.

La inaplicabilidad de la Ley núm. 289 de 1946 no significa que el obrero reclamante haya quedado en un estado de desamparo. La Ley núm. 80 de 1931, según enmendada, en conexión con la núm. 379 de 1948, contiene una fórmula especial en cuanto a la compensación a ser pagada en un caso como el de autos.(5) Tal como ya hemos indicado, la reclamación cubre el período de tiempo comprendido entre el día 13 de diciembre de 1946 y el 10 de agosto de 1949. Bajo la ley ya citada, núm. 24 de 15 de abril de 1935, enmendatoria de la núm. 80 y aplicable a este caso en cuanto al período de tiempo incluído entre el 13 de diciembre de 1946 y el 14 de mayo de 1947, el obrero reclamante tiene derecho a que se le pague a razón de un tipo doble de salario por cada hora trabajada por el obrero en los domingos o días especiales cubiertos por el permiso del Comisionado del Trabajo. Ni de la estipulación de ambas partes ni del exhibit I que se acompañó a la querella surge cuáles fueron esos días ni cuántas horas en esos días trabajó el reclamante. La Sala de San Juan del Tribunal Superior de Puerto Rico, a la cual estamos devolviendo este caso, debe oír prueba sobre esos extremos y formular las conclusiones y pronunciamientos

---

(5) La controversia en este caso ha girado en torno a la Ley núm. 289 de 1946, cuya inaplicabilidad hemos determinado. Sin embargo, en la querella se hace referencia a la Ley núm. 379 de 1948, que cubre, en parte, la compensación a ser pagada bajo la ley aplicable al caso, o sea, la núm. 80 de 1931, según enmendada, pero se formula la reclamación a base de la compensación a ser pagada por el hecho del obrero haber trabajado durante el séptimo día, que debe ser de descanso, a tono con tal Ley núm. 289 de 1946. Entendemos, en bien de la justicia, que el caso debe ser devuelto al tribunal inferior para que se determine a la luz de la prueba que se presente la compensación que ha de pagarse al obrero, si alguna, bajo la Ley núm. 80 de 1931, según enmendada, aunque ello envuelva las correspondientes enmiendas a las alegaciones, incluyendo las posibles defensas especiales que pueda presentar la interventora. (Véase 5 C.J.S. 1356.)

correspondientes. Debe hacer lo mismo en cuanto al período de tiempo comprendido entre el día 14 de mayo de 1947 y el 15 de mayo de 1948, aplicando la norma establecida en la Ley núm. 418 de 1947, o sea, cualquier tiempo extra trabajado por el reclamante en los domingos y días especiales autorizados por el Comisionado del Trabajo, será pagado a razón de un tipo doble de salario por hora si el obrero hubiere trabajado en esos días así autorizados especialmente durante un período total de ocho o más horas, y un tipo sencillo de salario si se tratare de obreros o empleados que no hubieren trabajado durante las ocho horas precedentes al período de trabajo extra. Tal como interpretamos esa disposición, si el obrero ha trabajado en uno de esos días especialmente autorizados durante ocho o más horas, debe pagársele a razón de un tipo doble por cada hora trabajada en esos días especiales, incluyendo, sin estar limitado a ellas, las horas trabajadas en exceso de ocho. Si el obrero ha trabajado menos de ocho horas, debe pagársele el tipo sencillo en cuanto a esas horas trabajadas. En cuanto al período de tiempo trabajado por el obrero entre el 14 de mayo de 1947 y el 10 de agosto de 1949, es de aplicación lo dispuesto en la Ley núm. 379 de 1948, al efecto de que "no serán horas extras las horas que el empleado trabaja para su patrono durante los días u horas en que el establecimiento deba permanecer cerrado al público cuando el patrono ha obtenido del Comisionado del Trabajo el permiso requerido por la Ley núm. 80 de 5 de mayo de 1931, según ha sido o fuere subsiguientemente enmendada, y la totalidad de horas trabajadas por el empleado durante ese día no exceda de ocho horas *ni* la totalidad de horas trabajadas durante la semana exceda de cuarenta y ocho horas." (Bastardillas nuestras.)

Tal disposición estatutaria implica que el obrero aquí reclamante tendría derecho a doble compensación por todas las horas trabajadas por él en los días especialmente autorizados por el Comisionado si en esos días él ha trabajado más

de ocho horas o si en la semana él ha trabajado más de cuarenta y ocho horas. En otras palabras, aun si el obrero no ha trabajado en exceso de ocho horas en tales días especiales, si en la semana él ha trabajado más de cuarenta y ocho horas, él tiene derecho a que se le pague a base de un tipo doble por todas y cada una de las horas que él trabaje en esos días especiales, ya que, en ese caso, esas horas trabajadas en tales días son consideradas como horas extras bajo el artículo 4 (d) de la Ley núm. 379 de 1948, que establece dos requisitos para que las horas trabajadas en días especiales autorizados por el Comisionado no sean consideradas como horas extras, a saber: (a) que en tales días especiales no se trabaje en exceso de ocho horas, y (b) que en la semana no se trabaje en exceso de cuarenta y ocho horas. Al no cumplirse ·con cualquiera de esos dos requisitos todas las horas trabajadas en días autorizados por el Comisionado son consideradas como horas extras sujetas a doble compensación. Debe observarse que en cuanto al primer requisito relativo a la jornada de ocho horas la fórmula implantada en la Ley núm. 379 de 1948 es análoga a la establecida en la ley anterior, núm. 418 de 1947. La núm. 379 le concede un beneficio adicional al obrero en cuanto a la implantación de un nuevo requisito relativo a la jornada de cuarenta y ocho horas a la semana. Debe señalarse, además, que aun si el obrero no ha trabajado en exceso de cuarenta y ocho horas durante la semana, si no se cumple el primer requisito, o sea, si el obrero ha trabajado en exceso de ocho horas en los días especialmente autorizados por el Comisionado, él también tiene derecho a doble compensación por todas y cada una de las horas trabajadas en los días especialmente autorizados, al igual que ocurre bajo la Ley núm. 418 de 1947.

El artículo 4 (d) de la Ley núm. 379 de 1948 no define la "semana". Una "semana" se ha definido, por la jurisprudencia general, en dos formas, ya sea como la semana de calendario, indicativa del transcurso de siete días de domingo

a domingo—*Ronkendorff* v. *Taylor*, 29 U.S. (4 Peters, 3ra. ed.) 212, 220; *Leach* v. *Burr*, 188 U.S. 510; *Chrysler Corporation* v. *Review Board*, 92 N.E. 2d 565—o indicativa del transcurso de cualesquiera siete días consecutivos—*Jackson* v. *Guss*, 120 Pac. 353; *Carpenter* v. *Okanogan County*, 299 Pac. 400; *In re Wright's Will*, 120 N.E. 725—todo ello de acuerdo con determinado contexto estatutario y con la situación especial envuelta. El artículo 2 de la propia Ley núm. 379 dispone que cuarenta y ocho horas de labor constituyen una semana de trabajo.(6) El contenido de la definición debe depender en la realidad prevaleciente en las relaciones entre patronos y obreros en una empresa determinada y de acuerdo con la situación especial de cada industria o actividad económica. No es necesario ni socialmente útil el que se adopte una fórmula rígida. *Cf. Compañía Popular* v. *Unión de Empleados*, supra. La norma debe ser flexible y realista. Distintas clases de industrias, establecimientos y empresas pueden tener distintos sistemas en cuanto a semanas de trabajo, desde el punto de vista de la contabilidad, las nóminas, el pago de salarios, los turnos de trabajo, las horas de labor, los ingresos, la naturaleza del trabajo en sí y otros factores relevantes a la relación con sus obreros y la naturaleza del negocio o del proceso de producción. En el caso de autos la controversia se ha referido a la aplicabilidad de la Ley núm. 289 de 1946 y no hubo prueba ni estipulación alguna relativa a la aplicación del artículo 4 (*d*) de la Ley núm. 379 de 1948, y, por lo tanto, no tenemos ante nos elemento alguno de prueba en cuanto a la naturaleza de la semana de trabajo en el negocio de la interventora. Al ser devuelto el caso al tribunal inferior, debe éste considerar la prueba relativa a los factores que hemos mencionado a los

---

(6) El Decreto Mandatorio núm. 5 referente a la industria de cerveza y gaseosas dispone que se entenderá por semana de 48 horas cualquier período de siete días. Se define como un período de siete días consecutivos en los Decretos núm. 7 (teatros y cines), núm. 8 (ventas al por menor), núm. 9 (pan, etc.), núm. 12 (transporte) y núm. 13 (lavado y limpieza de ropa).

fines de que pueda aplicar una norma concreta a tono con lo dispuesto por el ya mencionado artículo 4 (*d*). Naturalmente, la naturaleza de la "semana de trabajo" no debe determinarse a base de la selección arbitraria o caprichosa de una de las partes sino que la determinación debe corresponder a la realidad objetiva del sistema actualmente usado, tal como se demuestre por los libros de contabilidad o por otra prueba digna de crédito en cuanto a los distintos factores que hemos mencionado.

Aunque el tribunal a quo actuó correctamente al resolver que no era aplicable al caso de autos la Ley núm. 289 de 1946, a los fines de que pueda considerar y dictaminar sobre la prueba adicional que hemos señalado, a base de las normas legales que hemos expuesto, *se hace preciso el dejar sin efecto la sentencia y devolver el caso a la Sala de San Juan del Tribunal Superior de Puerto Rico para que ante ella se sigan los procedimientos ulteriores que no sean incompatibles con esta opinión.*

El Juez Asociado Señor Sifre no intervino.