JESÚS PONCE RAMOS y 151 obreros más, demandantes y recurridos, *v.* FAJARDO SUGAR COMPANY, demandada y recurrente.

*Número:* 12592   *Resuelto:* 6 de junio de 1962

*Sifre & Ruiz Suria, McConnell, Valdés & Kelly,* y *Ramón Cancio,* abogados de la recurrente; *Domingo Candelario* y *Manuel Janer Mendía,* abogados de los recurridos y del Departamento del Trabajo.

Sala integrada por el Juez Asociado señor Belaval como Presidente de Sala y los Jueces Asociados señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Ciento cincuenta y dos obreros querellantes representados por el Departamento del Trabajo interpusieron querella contra la Fajardo Sugar Co., reclamando salarios dejados de pagar en la cantidad para todos ellos de $4,751.96, más una suma igual por concepto de penalidad. Alegaron que durante los años de 1953 a 1955 ellos trabajaron siete días consecutivos y se les compensó el séptimo día o día de descanso a tipo sencillo en lugar de a tipo doble. Sometieron el caso a la Sala de instancia en virtud de una estipulación que en lo pertinente dispone:

"Los obreros querellantes trabajaban, y sobre esto no hay controversia entre las partes, 8 horas corridas durante los primeros 6 días de sus semanas de trabajo, comenzando la labor a una misma hora durante todos y cada uno de dichos días.

"La situación que ha dado lugar a esta reclamación surgió al verificarse los cambios de turno, ya que con motivo de dichos cambios de turno los obreros querellantes trabajaron durante horas que el Departamento del Trabajo entiende que están comprendidas dentro de sus séptimos días o días de descanso y en su consecuencia deben ser compensadas a tiempo extra, mientras que la querellada por su parte sostiene que por no estar comprendidas dichas horas dentro del séptimo día o día de descanso basta con compensarlas a tiempo sencillo.

"Todas las reclamaciones individuales incluidas en este caso están comprendidas dentro de una de las dos modalidades que especificaremos a continuación, concernientes ambas a los cam-

bios de turno verificados en la jornada de trabajo de los obreros reclamantes.

## PRIMERA SITUACIÓN

"Los obreros al cambiar sus turnos de trabajo de una semana a la otra comienzan a rendir su labor el primer día de la segunda semana de trabajo cuando han transcurrido solamente 32 horas desde que concluyeron su jornada correspondiente al sexto día consecutivo de trabajo de la semana anterior o primer semana. Según hemos expresado antes la jornada de trabajo de 8 horas se rinde en forma corrida o sea sin descanso.

## SEGUNDA SITUACIÓN

"Los obreros trabajan desde el lunes hasta el sábado un turno de trabajo que comienza a las 2:00 P. M. y termina a las 10:00 P. M. Al llegar el domingo se opera el cambio de turnos y los obreros comienzan a trabajar a las 6:00 A. M. del domingo hasta las 2:00 P. M. Como consecuencia de ello el trabajador que terminó su jornada correspondiente al sexto día consecutivo de trabajo durante la primera semana a las 10:00 P. M. del sábado de dicha primera semana, comienza a trabajar nuevamente el domingo (séptimo día consecutivo) a las 6:00 A. M. y trabaja 8 horas hasta las 2:00 P. M. de ese día y luego sigue trabajando en los días sucesivos de esa misma semana en ese mismo turno de 6:00 a 2:00 P. M. Las horas trabajadas durante el domingo por estos trabajadores les son pagadas a tipo doble y las trabajadas durante el lunes siguiente a tipo sencillo.

"El Departamento del Trabajo sostiene que, en la primera situación, las horas trabajadas por los obreros cuando tan sólo han transcurrido 32 horas desde que el trabajador terminó su jornada correspondiente al sexto día consecutivo de trabajo, están comprendidas dentro del séptimo día consecutivo o día de descanso de este trabajador.

"Igualmente en el segundo caso el Departamento del Trabajo sostiene que la labor realizada por los obreros el lunes de la segunda semana de trabajo está también comprendida dentro del séptimo día o día de descanso y debe ser compensada a tipo doble.

"       .       .       .       .       .       .       .       .

"El querellado por su parte sostiene que el día de descanso se extiende por un período de 24 horas que comienzan a contarse desde que el obrero rinde su jornada de trabajo correspondiente a su sexto día consecutivo de trabajo, lo que equivale a afirmar que en la segunda situación antes apuntada el día de descanso comienza el sábado a las 10:00 P. M., hora en que los obreros cesan de trabajar durante su sexto día consecutivo de trabajo y termina 24 horas después, o sea, el domingo a las 10:00 P. M.

"      .      .      .      .      .      .      .      .

"Si este honorable tribunal resolviese que la interpretación acertada es la del querellado y que en ambas situaciones apuntadas éste no venía obligado a pagar el trabajo a tipo extra por no caer las horas en controversia dentro del séptimo día en ese caso procedería la desestimación en su totalidad de la querellada.

"Si resolviese por el contrario que la interpretación acertada es la sostenida por el querellante y que en ambas situaciones apuntadas la labor realizada durante las horas en controversia se rindió durante el séptimo día, en ese caso el querellado admite que la cuantía de la diferencia en salario adeudada corresponde a la reclamada en la querella y se allana a que se dicte sentencia por tal suma.

"Si el tribunal resolviese que bajo alguna de las dos situaciones planteadas en este caso y que señaláramos antes las horas en controversia caen dentro del séptimo día y bajo la otra no, en ese caso las partes convienen en segregar las horas trabajadas bajo cada una de las dos situaciones para que el tribunal pueda fijar la cuantía de la sentencia."

La Sala sentenciadora declaró con lugar la demanda después de hacer las siguientes conclusiones de derecho:

"1.—La semana de trabajo (workweek) de un empleado es un período fijo y regularmente recurrente de 168 horas, que se divide en siete períodos consecutivos de 24 horas cada uno.

2.—Cada 'día de trabajo' consta de 24 horas, que se divide en 8 horas de trabajo y 16 de descanso. Este período de 16 horas de descanso dentro de cada día de trabajo constituye una limitación al día de trabajo, conforme a lo dispuesto en la Ley 379 según fue interpretada a la página 188, in fine, del caso de la Cía. Popular v. Unión de Empleados, 69 D.P.R. 179.

3.—El período de 24 horas que compone el 'día de trabajo' no tiene que corresponder necesariamente con un día natural, sino que puede comenzar dentro de un día natural y terminar dentro del siguiente.

4.—La semana de trabajo es una concatenación de 7 días, siendo estos 7 días 7 períodos consecutivos de 24 horas cada uno, los primeros seis 'de trabajo' y el último 'de descanso'.

5.—Este ciclo de 7 'días', o mejor de 7 períodos consecutivos de 24 horas cada uno, comienza cuando el obrero empieza a trabajar durante su primer día de trabajo al regresar de su período de descanso correspondiente a la semana anterior. (Véase caso de Cía. Popular v. Unión de Empleados, supra.)

6.—Hay la posibilidad de que al ocurrir un cambio de turno a los trabajadores se les obligue a comenzar a trabajar dentro de una semana determinada de trabajo antes de haberse vencido el período de descanso correspondiente a la semana anterior y en ese caso, debido a esta penetración de una semana de trabajo dentro de la siguiente, el obrero comienza su segunda semana de trabajo dentro de un período de tiempo que queda a la vez comprendido y forma parte del séptimo día o período de descanso correspondiente a la semana anterior. Esto es lo que sucede en ambas de las situaciones que han dado lugar a este pleito.

7.—Cuando las 8 horas de trabajo dentro de cada día de trabajo se rinden en forma corrida, el obrero tiene derecho a descansar 16 horas, también en forma corrida, desde que termina su jornada de trabajo correspondiente a un día hasta que comienza la jornada de trabajo correspondiente al día siguiente.

8.—Las 24 horas correspondientes al séptimo día comienzan a contarse al terminar las 16 horas que componen el período de descanso correspondiente al sexto día de trabajo, por lo que, en total, el obrero que trabaja a base de una jornada de 8 horas corridas, debe descansar 40 horas, desde que rinde su jornada durante su sexto día consecutivo de trabajo, hasta el comienzo de la siguiente semana de trabajo.

9.—Como la querellada admite que los obreros querellantes trabajaron durante las dos situaciones indicadas en los enumerados 5 y 6 de las conclusiones de hecho y que les pagó dicha labor a tipo sencillo, cuando conforme a las conclusiones de derecho a que hemos llegado debió haberle satisfecho a tipo doble, la querellada les adeuda a dichos querellantes la cantidad

básica reclamada en la querella, ya que admitió la exactitud de los cómputos en lo que respecta a la diferencia en salarios adeudada bajo tal hipótesis. Esta diferencia en salario asciende a la suma de $4,751,96.

10.—No habiéndoseles pagado oportunamente dicha diferencia en salarios a los obreros querellantes, éstos tienen derecho a reclamar, en adición a la misma, otra cantidad igual en concepto de penalidad adicional, para un total de $9,503.92."

Ambas partes están acordes en cuanto a que a los obreros en este caso les es aplicable la Ley 289 de 1946.(*)   Dicho estatuto dispone que:

"Todo empleado de cualquier establecimiento comercial o industrial, empresa o negocio lucrativo *que no estuviere sujeto* a las disposiciones sobre cierre al público del artículo 553 del Código Penal de Puerto Rico, según ha sido subsiguientemente enmendado, tendrá derecho a un día de descanso por cada seis (6) días de trabajo.

"A los efectos de esta Ley, se entenderá por día de descanso un período de veinticuatro (24) horas consecutivas.

"   .        .        .        .        .        .        .        .

"Todo patrono que emplee o permita que un empleado trabaje durante el día de descanso que se establece en esta Ley vendrá obligado a pagarle por las horas trabajadas durante dicho día de descanso un tipo de salario igual al doble del tipo convenido para las horas regulares."

Conjuntamente con el anterior estatuto debe aplicarse en este caso la Ley 379 de 15 de mayo de 1948. Esta Ley dispone que ocho horas de labor constituyen la jornada legal de trabajo en Puerto Rico, y 48 horas de labor constituyen una semana de trabajo. Dispone también que son horas regulares de trabajo ocho horas durante *cualquier* período de veinticuatro horas consecutivas; y que son horas extras de trabajo: (a) las horas que un empleado trabaja para su patrono en exceso de ocho horas durante *cualquier* período de veinticuatro horas consecutivas...;(d) las horas que

(*) Véase Ley 78 de 13 de junio de 1953 que enmienda la Sección 1 de la Ley 250 de mayo 9 de 1950 reenactando el Art. 553 del Código Penal.

un empleado trabaja para su patrono durante los días u horas en que el establecimiento en que presta servicio deba permanecer cerrado al público por disposición legal; (e) las horas que un empleado trabaja para su patrono durante el día de descanso que se haya fijado o se fijare por ley en el caso de industrias y negocios que no están sujetos al cierre de su establecimiento.

El problema que presenta este caso es el determinar en qué momento exacto comienza el período de veinticuatro horas consecutivas de descanso a que se refieren las Leyes 289 de 1946 y 379 de 1948, o dicho de otra manera, en qué momento exacto termina el sexto día consecutivo de trabajo que menciona la Ley 289. Esto depende a la vez del momento en que comienza dicho sexto día de trabajo. No obstante la amplia exposición en torno a los períodos de trabajo y de descanso contenida en *Compañía Popular* v. *Unión de Empleados*, 69 D.P.R. 179, y más tarde en *Sierra, Com.* v. *Tribunal de Distrito*, 74 D.P.R. 89, el problema específico aquí envuelto no fue en esos casos discutido.

Sostiene la demandada recurrente que el período de 24 horas consecutivas de descanso comienza al finalizar las labores del sexto día de trabajo. Sostienen los obreros que dicho período comienza al finalizar el sexto día de trabajo, y que éste comienza cuando el empleado empieza a trabajar ese día. El punto a resolver no se puede enfocar sin tomarse en cuenta la legislación referente al cierre de los establecimientos,—Art. 553 del Código Penal, según ha sido enmendado. En el año 1917, al aprobarse la Ley 26 de 23 de noviembre de ese año para enmendar dicho Art. 553, el Legislador por primera vez enlazó el aspecto del cierre con la cuestión de salarios, y dispuso en la Sección 3 de dicha ley que los empleados y dependientes de las empresas y establecimientos [no] (\*) exceptuados por el Art. 553 que prestaran

---

(\*) En *Parrondo* v. *L. Rodríguez y Co.*, 64 D.P.R. 438 aclaramos que este "*no*" se puso por error, y que la intención legislativa fue referirse a los establecimientos exceptuados por el Art. 553.

sus servicios sobre la base de un salario anual, mensual, semanal, o en cualquier otra forma que no fuera por jornal o ajuste a un tanto alzado, tendrían derecho a un día de descanso por cada seis de trabajo, *con salario íntegro.* Esta disposición se intercaló en otras leyes posteriores enmendatorias del Art. 553 tales como la Núm. 18 de 1925; la Núm. 54 de 1930(*) y la Núm. 110 de 13 de mayo de 1937, y estuvo en vigor hasta que la anulamos en noviembre de 1945 por una razón técnica, en *Laboy* v. *Corp. Azucarera Saurí y Subirá,* 65 D.P.R. 422. Quedó sustituida prontamente por la Ley 289 de 9 de abril de 1946.

El Art. 553 del Código Penal para el cierre de establecimientos y la Ley 289 que cubre los establecimientos exceptuados por dicho artículo, funcionan ambos a base de idénticos períodos de tiempo natural: las 168 horas cronológicas de una semana calendario divididas en seis porciones consecutivas de 24 horas cada una que forman el período de trabajo, y una porción de 24 horas consecutivas que corresponde al de descanso. La diferencia entre dichos períodos consiste sólo en que el Art. 553 al disponer que es el día *domingo* el que han de permanecer cerrados los establecimientos funciona *a fortiori* a base de la semana calendario de un domingo a otro y a base del día natural que comienza a las doce de la noche. Bajo la Ley 289 los períodos de trabajo y de descanso pueden coincidir con el día y la semana natural o del calendario, pero forzosamente no tiene que ser así. Pueden ser cualquier período de trabajo de seis porciones consecutivas de 24 horas cada una, no importa en qué día de la semana comience dicho período, y el de descanso, la porción que le sigue de 24 horas consecutivas, no importa que no coincida con el día natural.

Por la Ley 49 de 7 de agosto de 1935 se estableció por primera vez la jornada legal de trabajo en establecimientos

---

(*) La Ley 54 de 1930 fue derogada expresamente por la Núm. 250 de 9 de mayo de 1950.

comerciales e industriales y se fijó la misma en un período de 8 horas durante cualquier *día natural*. La Ley 379 de 1948 no exige que la jornada se preste en un día natural. Esta última dispone que son horas regulares de trabajo 8 horas durante *cualquier* período de 24 horas consecutivas, y 48 horas durante cualquier semana. Y la Ley 289 define el día de descanso como un período de 24 horas consecutivas. Ya en *Sierra, Com.* v. *Tribunal de Distrito, ante,* dijimos que la Ley 379 no definía la semana de trabajo, —excepto el disponer que 48 horas de labor la constituyen, —y que lo mismo podía ser una semana natural del calendario como un período indicativo de 7 días consecutivos de acuerdo con la situación especial de trabajo envuelta.

Veamos cuál sería la situación de una forma de trabajo parecida a la de este caso en un establecimiento sujeto al cierre del Art. 553 del Código Penal. Empezaron el lunes a las 6 y terminaron el sábado a las 2 P. M. Disfrutarían de 10 horas restantes del sábado que no vendrían obligados a trabajar (a menos que fuera extra), más las 24 del domingo y seis del lunes para un total de 40 horas desde la terminación de la jornada en el sexto día hasta su comienzo después del domingo, o 48 horas desde el comienzo de la jornada anterior. De igual manera los que trabajaron comenzando el lunes a las 2 y terminaron el sábado a las 10 P. M. disfrutarían de 40 horas desde que terminaron la jornada anterior hasta reanudar la labor después del cierre. Partiendo de la base de una jornada trabajada en forma corrida como lo es en el caso de autos, en un establecimiento bajo el Art. 553 *normalmente* transcurriría un mínimo de 48 horas entre comienzo y comienzo de la jornada regular domingo por medio, o un mínimo de 40 horas entre la terminación hasta que se reanuda. Pero ésta no puede ser una regla inflexible de derecho porque mientras el principio de la semana de trabajo es un factor constante: —el comienzo del lunes, —el principio de la jornada regular es un factor cam-

biante. De modo que si hubiera alteración en el turno de trabajo—(Tomemos como ilustración los cambios de turno de los aquí demandantes)—resultaría que para los que trabajaron de 6 A. M. a 2 que cambian a de 2 a 10 P. M. habrían transcurrido 48 horas en lugar de 40 desde que terminaron la jornada anterior hasta reanudar la próxima después del domingo, o 56 en lugar de 48 horas desde su comienzo. Pero en cambio, para los otros, que pasarían del turno de 2 a 10 P. M. al de 6 A. M. a 2, habrían transcurrido sólo 32 horas en lugar de 40 desde la terminación de la jornada antes del domingo, y 40 en lugar de 48 desde su comienzo. Dependiendo de la forma particular de trabajo en un establecimiento sujeto al Art. 553, y de la hora en el sexto día en que termina la jornada regular, podría haber fluctuaciones entre un mínimo de 24 y un máximo de 40 horas desde la terminación de la jornada del sábado hasta su reanudación en lunes, o entre un mínimo de 32 y un máximo de 56 horas desde que comienzan.

A tenor de la norma que la demandada recurrente insiste en aplicar en este caso bajo la Ley 289, los empleados reanudarían la jornada regular después del día de descanso, *siempre* a las 24 horas de terminada la jornada del sexto día consecutivo de trabajo, comparado con las 40 horas normalmente bajo la ley de cierre; o a las 32 horas en lugar de 48, de comenzada.

Aparte de que tal cálculo alteraría el equilibrio apropiado entre el período de la jornada diaria con sus horas de trabajo y de descanso y la semana de trabajo, no hay razón de fundamento para entender que el Legislador intentó tamaño discrimen entre los obreros en uno u otro tipo de establecimiento cuando ambas legislaciones, el Art. 553 y la Ley 289 responden a la misma política pública de protección al trabajador, cuando en ambas los períodos de trabajo y de descanso son idénticos en extensión natural y cuando la única diferencia, que no aguantaría el discrimen, es que el

Art. 553 se basa en el día y la semana del calendario y el día de descanso siempre ocurre en domingo, y la Ley 289 en cualquier período de igual extensión subdividido en iguales porciones. ■

Debemos resolver como cuestión de derecho de aplicación general en todo caso bajo la Ley 289 que el período de 24 horas consecutivas de descanso comienza a contar desde que termina el sexto día o período consecutivo de trabajo, y no a partir de la terminación de la jornada regular de ese día, excepto en aquel caso en que de hecho ambas cosas coincidieren. ■

El problema reside entonces en determinar cuándo termina el sexto período consecutivo de trabajo para lo cual sería necesario saber cuándo comienza. No puede sostenerse como un principio de derecho de general aplicación que siempre comienza al empezar la jornada regular de dicho día, según sostienen los demandantes. La razón es que bajo la Ley 289 tomada conjuntamente con la 379 existe la misma limitación de la semana natural: 168 horas divididas en porciones consecutivas de 24. Aunque no podría comenzarse una jornada regular antes de 24 horas del comienzo de la anterior, —Ley 379,— nada impide que comience después, ya que dicha jornada son 8 horas en *cualquier* período de 24. (*) ■

Para determinar cuando finaliza el sexto período hay que partir del comienzo de la labor en el primero después del descanso. (**) Este sexto período no empieza, como cuestión

---

(*) Como un ejemplo: —Si un obrero empezara la jornada regular a las 6 A. M. en el primer período después del descanso, pero a distintas horas más tarde en días sucesivos hasta comenzarla a las 4 P. M. el sexto período, el resultado sería, de tomarse el comienzo de la jornada del sexto período para calcular la terminación del mismo, que habrían transcurrido 154 horas en lugar de 144 y con el séptimo período de descanso se extendería hasta 178 horas, sobrepasando las 168 horas de una semana.

(**) En ausencia de un punto de partida fijo como lo es el comienzo del día en los casos del Art. 553, el único otro punto de partida que ofrece certeza es el comienzo de la jornada.

de derecho, antes de las 120 horas ni termina después de las 144 de comenzada la jornada del primer período. De modo que en último extremo la cuestión se resuelve en una de hecho, según la particular manera de trabajo que cada caso presente.

En el caso ante nos la estipulación demuestra que los obreros comenzaron el primer período a las 2 P. M. de un lunes y trabajaron en igual forma los períodos siguientes. Su sexto período terminó 144 horas después, o sea a las 2 P. M de un domingo. Su día de descanso terminaba a las 2 del lunes siguiente. Al cambiar de turno trabajaron el domingo de 6 A. M. a 2, jornada que se les pagó extra y tenía que ser así ya que caía dentro del propio sexto período después de rendida la jornada regular. El trabajo de las 6 A. M. del lunes hasta las 2 de dicho día estaba comprendido dentro de su día de descanso y procedía que se le pagara a tiempo doble.

En cuanto a la llamada "primera situación" de la estipulación, ya hemos visto que no puede sostenerse como punto escueto de derecho que toda labor comenzada a las 32 horas de terminada la del sexto período invadiría necesariamente el día de descanso. Depende de los hechos. La estipulación no ofrece con la debida certeza los hechos necesarios para determinar si en el caso de autos ello es así. Ante la incertidumbre preferimos *dejar sin efecto la sentencia y devolver el caso para que, a tenor de los últimos tres párrafos de la estipulación anteriormente transcrita, las partes ofrezcan a la Sala de instancia el desglose de las horas trabajadas bajo cada una de las dos situaciones y (1) compense a tiempo doble aquellas que correspondan a la "segunda situación" estipulada; (2) determine la compensación de las que de acuerdo con los hechos desglosados correspondan a la "primera situación", todo ello a tenor de las normas sentadas en esta opinión. Se devolverá el caso.*